**CONSUMERS UNION OF The UNITED STATES, INC., Plaintiff-Appellee,**

v.

**GENERAL SIGNAL CORP., and Grey Advertising, Inc., Defendants-Appellants.**

**Nos. 83–7855, 83–7859.**

United States Court of Appeals, Second Circuit.

Feb. 14, 1984.

---

**OAKES, Circuit Judge (dissenting):**

I dissent from the denial of the petition for rehearing en banc in this case, reported as *Consumers Union of United States, Inc. v. General Signal Corp.*, 724 F.2d 1044 (2d Cir., 1983). This case is the first to permit a manufacturer to use in its advertising copyrighted consumer research findings by a concern whose product consists of publication of those findings in its magazine, its syndicated news reports, and its broadcasts. It misapplies the doctrine of commercial free speech and takes the heart out of the "fair use" doctrine, codified in 17 U.S.C. § 107 (Supp. V 1981). In so doing, it permits the appropriation without compensation of another's statutorily secured intellectual property, thereby acting as a disincentive to consumer research, and is therefore injurious to the public interest.

The copyright statute, set out in the margin,[1] excludes fair use from copyright infringement, but circumscribes fair uses to uses "such as criticism, comment, news reporting, teaching ..., scholarship, or research...." The use of copyrighted material in television advertising is none of these; nor is it of the same character as these uses. Thus, I believe that such use should not have been approved under the fair use exception.

The statute mentions four factors for determining whether a particular use is "fair." The first of these, the "purpose and character of the use," clearly cuts against a finding of fair use in this case. The use here was clearly "of commercial nature," and not for "nonprofit educational purposes." While this court has rejected the proposition that "copying for commercial gain may never be fair use," *Rosemont Enterprises, Inc. v. Random House, Inc.*, 366 F.2d 303, 308 (2d Cir.1966), *cert. denied*, 385 U.S. 1009, 87 S.Ct. 714, 17 L.Ed.2d 546 (1967), it is very clear that use solely for commercial purposes is presumptively unfair. *Sony Corp. of America v. Universal City Studios, Inc.*, — U.S. ——, 104 S.Ct. 774, 808 & n. 32, 809, 813 n. 40 (1984). Moreover, advertising is the least favored commercial use. *See 3 Nimmer on Copyright* § 13.05[A] at n. 24 (1983).

The second statutory factor is "the nature of the copyrighted work." Here that work consists of the evaluation with comment of consumer tests and research, representing "a substantial investment of time and labor made in anticipation of a financial return." *MCA, Inc. v. Wilson*, 677 F.2d 180, 182 (2d Cir.1981) (citing *Wainwright Securities, Inc. v. Wall Street Transcript Corp.*, 558 F.2d 91, 96 (2d Cir. 1977), *cert. denied*, 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 759 (1978)). Although Consumer Reports may not be creative, imagi-

---

1. 17 U.S.C. § 107 provides:
   § 107. Limitations on exclusive rights: Fair use
   Notwithstanding the provisions of section 106, the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—
   (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
   (2) the nature of the copyrighted work;
   (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
   (4) the effect of the use upon the potential market for or value of the copyrighted work.

native, or original in the same way that a play or novel may be, *see New York Times Co. v. Roxbury Data Interface, Inc.*, 434 F.Supp. 217, 221 (D.N.J.1977), it still is much more than a catalog, index, or other compilation. Consumer Reports involves original, sometimes creative research, and a certain amount of imagination as to what subjective and objective factors consumers deem important.

The third factor is the "amount and substantiality of the portion used in relation to the copyrighted work as a whole." Here the panel is on its strongest ground, but the copying of, e.g., the essence of the findings as to one product is certainly substantial. *Cf. Roy Export Co. v. Columbia Broadcasting System Inc.*, 503 F.Supp. 1137 (S.D.N.Y.1980), *aff'd*, 672 F.2d 1095 (2d Cir.1982) (copying of one minute and fifteen seconds from one hour twelve minute motion picture held quantitatively or qualitatively substantial so as to preclude fair use defense). The conclusions quoted by Regina are both the essence of Regina's television commercial and the essence of the Consumers Union vacuum cleaner findings as reported in Consumer Reports.

The fourth factor is "the effect of the use upon the potential market for or value of the copyrighted words." Here the panel's opinion does not sufficiently recognize that it is the potential market, not the actual market, that is at stake in this case. True, Consumers Union does not sell its product endorsements as, I gather, "Good-Housekeeping" sold its "seal of approval." But Consumers Union potentially *could* do so, perhaps at considerable profit; the panel's opinion gives all product manufacturers a license, however, to use Consumer Reports' findings—pro or con—for nothing.[2]

Equally, if not more important is the fact that Consumers Union does *not* utilize this potential market in the interests of its own reputation for objectivity and honesty. Evidently it believes that this reputation is worth more—of greater "value," in the words of the statute—in the long run than the potential sales of endorsements are in the short run. It is that value which the panel's opinion depreciates and which makes defendant's use so unfair. The idea that "Regina would not want to quote" Consumers Union if the public was likely to think that Regina simply purchased its endorsement, expressed in the court's opinion, at 1050 n. 6, to answer this point is simply unpersuasive when seen in the light of a number of product sellers' quoting favorable Consumers Union findings (or their competitors quoting negative findings), all as licensed by the opinion of the court.

Finally, the panel suggests that the copyright laws aim to protect against competitors' copying, rather than against damages flowing indirectly from copying, as in the case of dramatic criticism. *Id.* at 1050–51. Concededly, the different functions performed by the words in question are relevant, *see* 3 *Nimmer on Copyright* § 13.-05[B], and the defense of fair use "is most universally recognized in connection with the function of criticism, and review." *Id.* at 13–70. But this defendant's use of Consumers Union's work is not for purposes of criticizing Consumers Union, but for purposes of exploiting Consumers Union's favorable critique of its product. Thus, the potential vacuum cleaner buyer, seeing Regina's commercial, and believing that it does not misstate Consumer Reports, need not buy the magazine to find out which vacuum cleaner tested best. Consumer Reports' market among vacuum cleaner buyers is clearly injured. If even a few manufacturers, twenty, for example, do what Regina is allowed to do, a large portion of Consumer Reports' whole market may disappear.

---

**2.** 3 *Nimmer on Copyright* § 13.05[A][4] at 13–65 states:

It is submitted, however, that it is a mistake to view this factor, as do some courts, as merely raising the question of the extent of damages to plaintiff caused by the particular activities of the defendant. This factor rather poses the issue of whether unrestricted and widespread conduct of the sort engaged in by the defendant (whether in fact engaged in by the defendant or by others) would result in a substantially adverse impact on the potential market for or value of the plaintiff's work.

I obviously think the panel wrongly decided this case. I also think it sufficiently important to warrant en banc consideration not only because "fair use" is one of, if not the most, difficult areas of copyright law, but also because the use of "commercial free speech" to justify a fair use defense to copyright infringement stands either the copyright law or the First Amendment on its head. A use for commercial purposes, the opinion suggests, is *more* entitled to the fair use defense than a use that is not. At the very least the panel opinion reads the presumption against the fairness of commercial use out of the statute. Doing so in the name of the First Amendment, I fear, cheapens that Amendment's coin.

For the foregoing reasons, I respectfully must dissent from the denial of a rehearing en banc in this case.