**GOYA FOODS, INC., Plaintiff,**

v.

**CONDAL DISTRIBUTORS, INC., Nelson Fernandez, Nestor Fernandez, Manuel Fernandez and Regent Enterprises, Inc., Defendants.**

**No. 89 Civ. 8530(MEL).**

United States District Court, S.D. New York.

March 16, 1990.

Baker & Friedman (Stephen L. Baker, of counsel) New York City, for plaintiff.

Meister Leventhal & Slade (Jeffrey C. Slade, of counsel), New York City, for defendants.

LASKER, District Judge.

Goya Foods, Inc. ("Goya") brought this action for trademark infringement and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and for common law trade dress infringement, misappropriation, dilution and unfair competition under New York Law. Goya moves for a preliminary injunction barring Condal Distributors, Inc. ("Condal") from distributing or selling rice in packaging which imitates the appearance of the trade dress used on Goya's five and ten pound bags of Canilla rice ("Canilla"). Goya also seeks the recall and impoundment of the alleged infringing Condal rice bags. A hearing was held over the course of four days between January 29, and February 8, 1990.

Goya, the leading seller of rice in the New York area, has been marketing its popular Canilla brand rice since 1964 in the same trade dress in one, three, five and ten pound plastic packages. In 1989 Goya sold some 2 million cases of Canilla rice in the New York area. Canilla rice is extensively advertised on television, radio and in print. The Condal five and ten pound rice packages at issue were introduced in the New York market for the first time just a few months ago and are part of an overall effort by Condal to redesign its food packages.

### I. LIKELIHOOD OF CONFUSION

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides:

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or misleading representation of fact, which—

(1) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ...

.    .    .    .    .

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

To establish trade dress infringement under § 43(a) Goya must show 1) that its trade dress has secondary meaning in the marketplace and 2) that a likelihood of confusion exists between the Goya and Condal packages. *LeSportsac, Inc. v. K Mart Corp.*, 754 F.2d 71, 75 (2d Cir.1985).

The general requirements for preliminary injunctive relief are both possible irreparable harm and either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships favoring the plaintiff. *Id.* at 74. However, with respect to a Section 43(a) claim, a showing of likelihood of confusion as to source establishes both likelihood of success on the merits and risk of irreparable harm. *Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 73 (2d Cir. 1988); *Standard & Poor's Corp. v. Commodity Exchange*, 683 F.2d 704, 708 (2d Cir.1982). Accordingly, if Goya can show a likelihood of confusion under Section 43(a) it will be entitled to preliminary injunctive relief.

To establish likelihood of confusion, plaintiff must establish "a likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." *Hasbro*, 858 F.2d at 75 (quoting *Mushroom Makers Inc. v.*

*R.G. Barry Corp.*, 580 F.2d 44, 47 (2d Cir.1978), *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979)).

The relevant factors in determining likelihood of confusion were set forth in the seminal decision in *Polaroid Corp. v. Polaroid Elecs. Corp.*, 287 F.2d 492 (2d Cir.), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961). They are: (1) the strength of the mark, (2) the degree of similarity between the two marks, (3) the proximity of the products, (4) the likelihood that a senior user of the mark will bridge the gap, (5) evidence of actual confusion, (6) the junior user's good faith in adopting the mark, (7) the quality of the junior user's product and (8) the sophistication of the relevant consumer group. 287 F.2d at 495. These factors are intended to serve as a flexible guide, not a "rigid formula," in determining likelihood of confusion. *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 872 (2d Cir. 1986). *See Orient Express Trading Co. v. Federated Dept. Stores*, 842 F.2d 650, 654 (2d Cir.1988).

A. *The Polaroid Factors*

1. Strength Of The Mark

The strength of a mark has been defined as "its tendency to identify the goods sold under the mark as emanating from a particular ... source." *McGregor–Doniger Inc. v. Drizzle Inc.*, 599 F.2d 1126, 1131 (2d Cir.1979). In determining the strength of the mark in a trade dress case, functional aspects of a mark (those that are essential to its use or purpose), which are not protected, must be weighed against the distinctive portions of the mark, which are protected. *LeSportsac*, 754 F.2d at 75. The only functional aspects of Goya's Canilla bag are the clear plastic material, the nutritional information and the "UPC" marking. All of the other markings on the plastic packaging, are distinctive features. These include the overall combination of the four colors—green, red, black and white—used on the Canilla package, the bowl of rice on the front of the package with the clear semi-circle through which the rice inside the package is visible, and

the side panel design of two vertically arranged solid colored blocks. Accordingly, the strength of Goya's mark is considerable.

### 2. The Degree of Similarity Between The Marks

The Canilla and Condal bags use similar color schemes. Each package contains four colors: red, green, white and black. The shade of each of these colors is nearly identical when compared side by side. Both packages also use a design of a rice bowl on the front of the package and each bowl has a clear interior to show the rice inside. The Condal five and ten pound packages are the only other rice packages in the New York area which have, like Canilla, a side panel design with two equal size blocks of solid color and the brand name arranged vertically.[1] Moreover, the Condal package contains the identical recipe for Spanish White Rice which appears on the Canilla package.

Condal has pointed out several differences in the two packages. For example, on the side of the Condal package the name Condal appears prominently in white print lettering against a red background and the words "EXTRA LONG GRAIN ENRICHED" are printed with white print lettering. By contrast, on the Canilla bag the word "Canilla" is printed in black script lettering against a green background and the Spanish words "ARROZ ENRIQUECIDO [enriched rice]" are printed in white letters against a red background. Franklin Garcia, an independent artist who Condal employed to design several new labels for its packages, testified that the colors and styles of the bowls on each package differed. T. at 260.

However, in evaluating the similarity of two packages "it is the combination of features as a whole rather than a difference in some of the details which must determine whether the competing product is likely to cause confusion in the minds of the public." *Harlequin Enterprises, Ltd. v. Gulf &*

*Western Corp.*, 644 F.2d 946 (2d Cir.1981). In *Harold F. Ritchie, Inc. v. Chesebrough–Pond's, Inc.*, 281 F.2d 755 (2d Cir.1960) the court held in a trade dress infringement action:

> While a side by side comparison of the trademarks, tubes and cartons would enable an attentive observer to differentiate them, this is not the test to be applied.19  It is the general overall impression which counts.
>
> [FN 19 states: This is especially true where inexpensive products are involved, since the normal buyer does not exercise as much caution in buying an inexpensive article as he would for a more expensive one, making confusion more likely.]

281 F.2d at 762 (citations omitted). In this case, considering the combination of features as a whole on each package, there is a marked similarity in the general overall appearance of the Canilla and Condal bags. This factor clearly favors Goya.

### 3. The Competitive Proximity Of The Products

Canilla rice and Condal rice are both fancy extra long grain rice and are generically identical. They are sold in the same sorts of stores and are marketed to the same class of consumers. They often appear on the same shelves of the same retail food stores, although at many stores they appear on different shelves because Goya has its own shelves on which only Goya products are sold. Overall, they are in close competitive proximity, a factor which tends to exacerbate the likelihood of confusion.

### 4. Bridging The Gap

"Under this factor, if the owner of a trademark can show that it intends to enter the market of the alleged infringer, that showing helps to establish a future likelihood of confusion as to source." *Lois Sportswear*, 799 F.2d at 874. In this case, Goya is already in all of the geographic

---

**1.** Testimony of Conrad Colon, Vice-president of purchasing for Goya, Trial Transcript ("T.") at 23, 25.

markets of Condal's,[2] a fact which strengthens Goya's claim.

### 5. Evidence of Actual Confusion

Much of the testimony and evidence offered at the hearing related to actual consumer confusion. Each side conducted and introduced into evidence a study of consumer confusion. Richard Tobin, a founder and President of Strategy Research Corporation, a market survey research firm, testified about a consumer market survey he designed, wrote and conducted for Goya ("the Tobin Study") to determine "if there is a measurable likelihood of confusion among Hispanic rice purchasers"[3] as to the source of the Condal package in the New York and Miami markets. The Tobin Study was based on 508 face-to-face interviews conducted in Spanish in consumers' homes by trained Strategy Research staff.[4] The interviewers were not told the purpose of the study or the name of the client.

Respondents were shown a package of Condal rice and asked: "What is the first thing that comes to mind when looking at this package of rice?" In New York 2.7 percent of the respondents said that the Condal package looked like Canilla/Goya and all who gave this response said so because of the packaging. When asked "What is the first company or brand that comes to mind when you look at this package of rice?" 44.9 percent of all New York respondents replied that the first company or brand that came to mind was Canilla/Goya. Of this 44.9 percent, 27.5 percent said that the similarity of the package was what caused them to say that the Condal package they were shown made Canilla/Goya come to mind and 20.5 percent said specifically that the Condal and Canilla/Goya packages are very similar or identical. Based on these figures, Tobin

testified that "there is a significant likelihood of confusion because of package dress between the Condal package that we showed [the respondents] and the Canilla package that is in the market." T. at 139. Tobin's testimony was credible and persuasive and his study was impressive in design and execution.

Condal conducted two market survey studies of Hispanic consumers of Condal rice in the New York area. In the first study ("the Rice Study"), 68 Hispanic purchasers of Condal rice in the Bronx and Manhattan were asked "what brand of rice did you buy today, if any?"[5] All 68 respondents replied correctly that they had purchased Condal rice.[6] Lee Slurzberg, President of Lee Slurzberg research—the firm that conducted the studies for Condal, testified that based on the results of the Rice Study there was no confusion among purchasers of Condal as to the brand name of the product they had purchased. T.2 at 22–23. He also testified, as the lead survey question indicates, that the study was not designed to determine whether purchasers of Condal believed that the Condal rice might have come from the same source as Canilla. T.2. at 36. Accordingly, the Rice Study is, by its designer's own admission, not probative of likelihood of confusion regarding the source of the Condal rice bag.

In the second study conducted by Slurzberg ("the Bag Study"), his staff interviewed 34 Hispanic adult grocery shoppers in shopping malls in the New York area. Respondents were handed an empty Condal bag and asked "What brand of rice is this?" As Slurzberg conceded, three out of the thirty-four (9 percent) identified the Condal bag as Canilla or Goya. T.2 at 25–26.

Dr. Michael Rappeport, an expert in market survey research, testified persuasively

---

**2.** Nestor Fernandez testified that Condal distributes its products in New York City, Boston, Philadelphia and New Jersey. T. at 228.

**3.** Plaintiff's Exhibit 34, "Brand Identification Study" at 1.

**4.** 258 interviews were conducted in New York City, and 250 in Miami. The respondents in Miami were used as a control group because

Condal does not distribute its products in Miami. T. at 122.

**5.** Defendants' Exhibit S, "Rice Studies Conducted for: Condal Distributors," ("Rice Studies") February 1990, at 4; Trial Transcript of February 8, 1990 ("T.2") at 22.

**6.** Defendants' Exhibit S, Rice Studies at 4.

for Goya that the Slurzberg Bag Study amounted to a "reading test" in which respondents were simply asked to read the name of the brand on the bag—Condal. T.2 at 80–81. Given this design flaw, Dr. Rappeport found it remarkable that as many as 9 percent of the respondents nonetheless identified the Condal bag they were shown as a Canilla/Goya bag. He testified that any figure greater than 7 percent in this sort of study

> is meaningful and represents a real confusion in this case, not even likelihood of confusion. [T]hese people could not even read the bag. It may well be and there are two possibilities that I would say reflect on that. One is that some people in fact may not be able to read. That is one reason why trade dress is important.... The second is people tend to do things in a hurry. They tend to buy rice in a hurry.... You pick it up and go.

T.2 at 81–82.

Dr. Rappeport also testified persuasively that of the three studies conducted in this case, the Tobin Study was best designed to determine likelihood of confusion as to source. T.2 at 90. Dr. Rappeport analyzed the results of the Tobin Study and concluded that, discounting for persons who may be guessing or providing random or untruthful answers, ten percent of the respondents were actually confused as to the source of the Condal bag. T.2 at 94–97. This figure, like the figure in the Bag Study, exceeds the level of seven percent which Dr. Rappeport testified was statistically meaningful.[7] Accordingly, the survey evidence presented in this case establishes that there is meaningful evidence of actual confusion as to the source of the Condal five and ten pound rice bags among Hispanic consumers in the New York area.

### 6. Condal's Good Faith In Adopting The Mark

Nestor Fernandez, a Condal officer who supervised the design of the new Condal rice package, testified that he knew of the Canilla trade dress for ten years prior to the adoption of the Condal trade dress. T. at 226. Goya argues that this prior knowledge, along with Condal package designer Garcia's own familiarity with the Canilla bag, is circumstantial evidence of Condal's bad faith and fraudulent intent in designing a package similar to Canilla's. However, Fernandez also testified that he and Garcia explored various color combinations before settling on green, red, white and black and that they were not thinking of the Canilla color combination at the time. T. at 236. Accordingly, this factor does not weigh in either party's favor.

### 7. The Quality Of The Junior User's Product

There is no serious dispute that the quality of Condal's rice is similar to the Canilla rice. To the extent that the Condal rice is not inferior to Canilla, Goya's interest in protecting its reputation for quality is lessened. On the other hand, the similarity in the quality of Canilla and Condal rice may increase the likelihood of confusion. *See Lois Sportswear*, 799 F.2d at 875. Accordingly, this factor does not weigh in favor of either party.

### 8. The Sophistication Of The Relevant Consumer Group

Canilla and Condal rice are both relatively low-priced staple items which are marketed heavily in the Hispanic market. Although there was no direct evidence of the sophistication of the relevant consumer group, the nature of the product and its low price suggest that purchasers of the product typically do not spend much time evaluating the product before making a purchase. As Dr. Rappeport testified, when purchasing a low-cost staple food item consumers often rely on color as they quickly grab the product off the supermarket shelf. T.2 at 82. Accordingly, regard-

---

**7.** Moreover, Dr. Rappeport's opinion that any figure greater than 7 percent is meaningful is supported by the relevant case law. *See Grotrian, Helfferich, Schulz v. Steinway & Son,* 365 F.Supp. 707, 716 (S.D.N.Y.1973) (survey evidence showing that out of 520 respondents 7.7% perceived business connection and 8.5% confused names of two companies showed "strong evidence" of likelihood of confusion), *aff'd* 523 F.2d 1331 (2d Cir.1975).

**458**

less of the sophistication of the relevant consumer group, the very nature of the product favors Goya's claim of likelihood of confusion.

Having considered all of the factors above, but especially the distinctive nature of Goya's Canilla trade dress, the significant similarity between the Canilla and Condal packages, the persuasive survey evidence of actual confusion and the impressive testimony of Tobin and Dr. Rappeport, I conclude that an appreciable number of ordinary consumers are likely to be confused as to the source of the Condal five and ten pound rice packages. Accordingly, as discussed above, because there is a likelihood of confusion, Goya has satisfied the requirement for issuance of a preliminary injunction.

Submit proposed decree on notice.

It is so ordered.