**AMERICAN DIRECT MARKETING, INC., et al., Plaintiffs,**

**v.**

**AZAD INTERNATIONAL, INC., et al., Defendants.**

**No. CV–91–3885.**

United States District Court, E.D. New York.

Jan. 31, 1992.

Rosner & Goodman, New York City, for plaintiffs.

Cooper & Dunham, New York City, for defendants Ajit Khubani and Telebrands defendants.

Colucci & Umans, New York City, for defendants Azad, and Victor and Ashok Khubani.

## CORRECTED MEMORANDUM AND ORDER

SIFTON, District Judge.

The matter is currently before the Court on a motion for a preliminary injunction in a case involving alleged infringement of copyrights, trademarks, and trade dress. For the reasons discussed below, the motion is denied without an evidentiary hearing. Defendants' request to consolidate this case with one now pending before Judge Dearie is denied. Plaintiffs' request for permission to amend the complaint is granted on condition. Their request for expedited discovery is referred to Magistrate Judge Ross to whom the case has been assigned.

### SUMMARY

This case involves competition by television advertising and direct mail marketing. The parties both began to sell a three-part tooth whitening system and a rotating toothbrush at approximately the same time. The merchandise is not patented. Therefore, the protagonists have employed other legal theories in their attempts to protect their profits.

Plaintiffs make claims under both intellectual property theories and contract. The current motion requests broad preliminary relief based on the intellectual property claims.

Plaintiffs' allegations in support of the various intellectual property claims made are, to say the least, unclearly stated. While the plaintiffs' papers are confused as to what items are sought to be protected under what theory, such a determination is essential since the requirements for relief and protection afforded under the various theories are not identical.

This Court reads these papers to make the requests for protection discussed below. Any others touched on by the plaintiffs have simply not been developed sufficiently to establish a prima facie case.

Under copyright, plaintiffs request protection for two items: a short television commercial and the text of the instructions for use of a tooth whitening system.

Plaintiffs also request permission to amend their complaint to seek protection for the artwork and other text (beyond the instructions) presently used in the insert to their clam-pack. (A "clam-pack" is a type of package in which the product is enclosed in a clear plastic wrapping.)

■ Copyright protects "original works of authorship" pursuant to 17 U.S.C. §§ 101 *et seq.* and covers commercial items including mundane advertisements. *Bleistein v. Donaldson Lithographing Co.,* 188 U.S. 239, 23 S.Ct. 298, 47 L.Ed. 460 (1903). A prima facie case of copyright infringement requires a showing that a plaintiff holds a valid copyright for the work and that a defendant has copied protected elements of that work. Defenses include permission to use the original work and independent creation of the allegedly infringing work.

A preliminary injunction based on copyright must be denied with respect to the commercial sought to be protected because the elements allegedly copied are not protectible subject matter.

As to the balance of plaintiffs' copyright claims, a hearing might be appropriate in other circumstances as the plaintiffs have made out a prima facie case for infringement; defendants' papers raise the defense of independent creation as to the artwork and permission as to the instructions and material facts are disputed. However, as discussed below, it is inappropriate in the circumstances of this case to invoke the presumption of irreparable harm usually resorted to in copyright cases, and irreparable harm has not been otherwise demonstrated. Accordingly, a preliminary injunction based on copyright must be denied without a hearing due to plaintiffs' failure to make even a prima facie showing of irreparable harm.

Under the law of trademark and trade dress, plaintiffs seek to protect the word PLAK–AWAY, which they use for a rotating toothbrush, and the appearance of two packages for their tooth whitening system. These packages will be referred to as the opaque box and the clam-pack.

Neither of these has been registered as marks with either federal or state agencies. The plaintiffs seek protection under the Lanham Act, 15 U.S.C. § 1125(a), New York State Genl. Bus. Law § 368–d, and the New York state common law of unfair competition.

The law of trademarks (including trade dress) protects the consumer's mental association between the commercial item and the source of that item.

All of these bases of protection require, *inter alia,* a showing of the existence of consumer mental association between the specific item and its commercial source. Because the showing of this association is insufficient, a preliminary injunction is also inappropriate on any of these claims.

## PROCEDURAL MOTIONS

■ Before discussing each of these claims, I turn as a preliminary matter to a request for consolidation, a request for leave to amend the complaint, and a request for expedited discovery.

Defendants request consolidation of this case with a case currently before Judge Dearie, *Howe Chemicals v. CCA Industries,* CV–91–0631. Plaintiffs oppose this request.

Local rule 50.3 allows a motion for consolidation of related cases. Cases are related if the facts or legal issues are sufficiently similar so that "a substantial saving of judicial resources" would likely result from consolidation.

The case before Judge Dearie involves one of the plaintiffs here, Howe Chemical, which is alleged in the case before Judge Dearie to have infringed CCA Industries' trade dress rights in a package for a tooth whitening system. The trade dress alleged to be infringing is Howe's clam-pack.

This clam-pack is also alleged to have been infringed in the instant suit. There is no other identity of parties or issues between the suits. Even as to the common item, the factual issues raised are different. This very limited overlap is insufficient to make it likely that consolidation would lead to a substantial saving of judi-

cial efforts. Defendants' request for consolidation is, therefore, denied.

By papers dated October 29, 1991, plaintiffs request leave to amend their complaint to add the following:

"(i) copyright infringement of the artwork and text (in addition to the instructions) on plaintiffs' packaging, (ii) trade dress infringement of plaintiffs' display box packaging, and (iii) copyright infringement based on Defendants' use of Plaintiffs' instructions on all of Defendants' 'Dazzle' packaging [Dazzle is defendants' tradename for the tooth-whitening system]."

In addition, plaintiffs wish to amend the complaint by adding as a defendant Telebrands Direct Response Corporation ("TDRC") which is one of the interacting corporations said to be largely owned by defendant Ajit Khubani.

Fed.R.Civ.P. 15(a) directs courts to be liberal in granting requests to amend pleadings. This request is made very shortly after the commencement of the suit. The Telebrands defendants and Ajit Khubani have stated they do not oppose these requests to amend the complaint.

Leave to amend is, therefore, granted on the following condition: plaintiffs must clarify the language of this amendment by stating the copyright registrations involved. As currently worded, the new claims are too elastic. Defendants deserve notice of the extent of the claims made.

As to expedited discovery, this application is opposed by all defendants on various grounds. Since, for the reasons discussed below, no preliminary injunction hearing will be held, I will not set a discovery schedule but will follow the usual practice of referring the matter to Magistrate Judge Ross to whom the case is assigned.

## FACTUAL BACKGROUND

The following facts, except where expressly noted or described as an allegation, are undisputed. Plaintiffs in this action are four corporations, in all of which Herman S. Howard ("Howard") is president and/or chairman of the board: American Direct Marketing, Inc. ("American Direct"), American Four Marketing, Inc. ("American Four"), Howe Plastics and Chemical Company d/b/a Howe Co. ("Howe Plastics"), and Howe Laboratories, Inc. ("Howe Labs"). Plaintiffs refer to the last two collectively as "Howe."

The plaintiffs' products at issue in this suit are a rotating tooth brush (known both as "Plak–Away" and "Neutra–Plaque") and a tooth whitening system (know both as "Pearly White" and "Instant White"). Also at issue are certain commercials and so-called "infomercials" (programs sponsored by businesses to provide information on their products) for these products.

American Direct is the distributor of these products for direct sale to consumers. American Four handles the advertising and promotion. Howe is a packager and distributor to retail stores.

Defendants in this action are Azad International, Inc. ("Azad"), Telebrands Direct Response Corporation ("TDRC" formerly known as Direct Marketing of Virginia, Inc.), Telebrands Advertising Corporation ("Telebrands Advertising"), Telebrands Wholesale Corporation ("Telebrands Wholesale," formerly known as U.S. Buyers Network), Telebrands Retail Corporation ("Telebrands Retail," formerly known as As Seen on TV, Inc.) (the four immediately prior corporations will be referred to together as the "Telebrands Defendants" or "Telebrands Corps."), Victor Khubani ("Victor"), Ashok (Chuck) Khubani ("Chuck"), Chuck Khubani d/b/a AP Wholesalers ("AP"), and Ajit Khubani ("Ajit").

Azad and AP are suppliers of the toothbrush. However, other sources for the same brush exist. Victor is the sole owner of all voting shares of Azad. AP is a partnership; one of the partners is Victor's son, Chuck.

TDRC is a direct marketing business and is affiliated with the other Telebrands Defendants. Telebrands Advertising acts as TDRC's advertising agency. Telebrands Wholesale sells the TDRC products to large retail customers. Telebrands Retail sells the same products to smaller retail

outlets. The products handled by these firms include a rotating toothbrush (allegedly virtually identical to the plaintiffs') sold under the name "Plak–Away" and "Plak–Away 2000" and a tooth whitening system named "Dazzle" which is allegedly virtually identical to the plaintiffs' tooth whitening system.

Ajit, son of Victor, is president of the four Telebrands Corps.

In October 1990, plaintiff American Four began broadcasting a two minute commercial and a thirty minute infomercial on the toothbrush and tooth whitening system under the names "Neutra–Plaque" and "Instant White," respectively. This commercial has been broadcast since then nationwide. It is covered by U.S. Copyright Registration No. PA 529,925 in the name of American Four. A copyright notice appears on all broadcasts.

Since October 1990, American Direct has distributed the same toothbrush and tooth whitening system under the names "Plak–Away" and "Pearly White," respectively.

Plaintiffs' tooth whitening system is manufactured by Crescent Manufacturing Co. (a New York corporation owned by Scott Howard, Herman S. Howard's son) under allegedly strict quality control standards. Since October 1990, it has been packaged and distributed nationwide by Howe. Plaintiffs allege this packaging is a unique trade dress.

Plaintiffs allege they have used substantial time, money and effort in the creation of the described advertising material and trade dress. They allege costs over $4,925,914.

The toothbrush and tooth whitening system are usually sold together. Plaintiffs allege sales of over 150,000 such units totaling over $8,429,244 in sales.

No breakdown is supplied by product, type of package, or tradename used. Plaintiffs argue that these figures show that the public has come to associate plaintiffs' products exclusively with plaintiffs.

Plaintiffs' allegations concerning the contract claim are irrelevant to the current issues except that they allege that in the course of negotiations representations were made by Victor that Ajit was involved in Victor's company and that Victor could and would control Ajit to prevent competitive action of certain types against Howard's companies.

All the defendants contest these statements concerning the relationship between the allegedly infringing activities of Ajit and the Telebrands Corps. and the other defendants.

Plaintiffs allege activities by the defendants from approximately April 1991 through the present involving the sale of toothbrushes and a tooth whitening system that are allegedly virtually identical to plaintiffs'. Plaintiffs' papers consistently refer to the actions of "defendants" without much distinction between the various parties.

Howard asserts that in April 1991 he learned that defendants were broadcasting a commercial similar to American Four's. He allegedly spoke to Victor who promised to speak to Ajit. Howard believes defendants stopped using this commercial from April through July 1991. In July, Howard asserts he again became aware that defendants were using the allegedly infringing commercial.

Howard's attorneys sent a letter to the Khubanis demanding, *inter alia*, an end to the infringing conduct. Ajit's attorney replied denying, *inter alia*, that Ajit had infringed any of plaintiffs' rights.

Howard alleges that he discovered in August 1991 that defendants were copying his commercial, using the trademark PLAK–AWAY, and using packaging similar to his both for a teeth whitening system and for a unified presentation of a toothbrush and tooth whitening system.

On September 12, 1991, at a trade show in New Orleans, Howard's son saw a display by defendants of an allegedly virtually indistinguishable toothbrush under the name POWER PLAK 2000 in an allegedly virtually indistinguishable trade dress.

Howard alleges he called Chuck and Victor during the weeks following the trade show to complain about this behavior. He

does not specify the number, dates, or details of these calls. Victor allegedly responded that he could no longer control Ajit.

Both Chuck and Victor deny that they are in any way involved in the allegedly infringing activities mentioned by the plaintiffs.

Plaintiffs present what they allege is a videotaped copy of Telebrands Advertising's two and one-half minute commercial for the POWER PLAK 2000 rotating toothbrush and DAZZLE tooth whitening system. Plaintiffs consider it remarkably similar to their commercial in many details and in overall look and feel.

Howard alleges actual confusion of defendants' commercial with his by Richard Muldawer, the producer of American Four's commercial. Muldawer asserts that on viewing defendants' commercial he thought it was a commercial produced for the plaintiffs by a different director and selling the plaintiffs' products under different brand names for a lower price.

Howard alleges that the defendants' DAZZLE tooth whitener uses a virtually identical package and trade dress to the plaintiffs' system as shown by the defendants' color advertisement. Howard also asserts that plaintiffs use great care in the quality control of their tooth whitening system. Defendants in the past have bought the product from Howard's supplier (Cresent), but plaintiffs cannot control defendants' choice of source. They, therefore, assert that defendants may use lower quality goods which will adversely affect plaintiffs' reputation because of customer confusion of the two products.

Howe Chemical holds two copyright registrations relevant to the packaging of the tooth whitening system. Both are dated March 15, 1991. Registration TX 3 008 582 covers "How To Use INSTANT WHITE." The deposit is the text of the product use instructions currently printed on the back of the plaintiffs' clam-pack insert card. Completion of the work is claimed in 1989 and first United States publication on January 12, 1990.

Registration TX 3 008 580 covers "INSTANT WHITE insert card for plastic package." The deposit is the front and back of the present insert card in plaintiffs' clam-pack. The registration is for the instructions, the artwork on the front of the card, and the text on the front of the card. Completion of the work is claimed in 1990 and first United States publication on September 15, 1990.

The back of defendants' current clam-pack and opaque packages have instructions identical almost word-for-word to those claimed in these copyrights.

Chuck Khubani alleges that on behalf of AP Wholesalers he has been buying the three compounds in the tooth whitening system from Howe Chemical since July 1990. He further alleges that in July 1990 Scott Howard, president of Howe Chemical, gave him a written copy of these product instructions with permission to use them without editing. Chuck asserts that, according to industry custom, manufacturers' instructions are used with any product purchased from the manufacturer regardless of the tradename used in its final sale. Chuck asserts he gave the instructions to TDRC pursuant to this permission and custom.

Scott Howard responds that he knows of no industry custom of using the manufacturer's instructions. He further asserts that he never gave Chuck Khubani permission to use these instructions.

Defendants also assert that plaintiffs knew of their use of these instructions from approximately April 1991. Plaintiffs assert they actually learned of this use in October of 1991.

## DISCUSSION

■ To obtain a preliminary injunction, the moving party must show (1) irreparable injury and (2) either (a) likelihood of success on the merits or (b) serious questions going to the merits so as to make them a fair ground for litigation and a balance of hardships decidedly in favor of the movant. *Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 73 (2d Cir.1987). The showing of irreparable injury if relief is deferred till

after final adjudication of the suit is an "absolute requirement." *Stewart v. United States Immigration & Naturalization Svc.*, 762 F.2d 193, 199 (2d Cir.1985).

■ If facts are in dispute, an evidentiary hearing is needed to issue a preliminary injunction, *see, e.g., Fengler v. Numismatic Americana, Inc.*, U.S., 832 F.2d 745, 747 (2nd Cir.1987). However, the moving party has the burden of making the prima facie showing required and may be refused an injunction without a hearing if their papers fail to do so. *See, e.g., SCM v. Xerox*, 507 F.2d 358 (2d Cir.1974).

For the reasons discussed below, a preliminary injunction is denied on all of the claims without an evidentiary hearing since, even accepting plaintiffs' assertions, a prima facie showing of entitlement to preliminary relief has not been made.

While each of these causes of action must be discussed separately, defendants Telebrands Corps. and Ajit raise two issues common to all which I discuss as a preliminary matter.

■ These defendants argue that plaintiffs' delay in bringing suit is in itself sufficient to require a finding of no irreparable harm in regard to all of the intellectual properties at issue. They rely on *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir.1985).

"Significant delay in applying for injunctive relief in a trademark case tends to neutralize any presumption that infringement alone will cause irreparable harm pending trial, and such delay alone may justify denial of a preliminary injunction."

The cases cited by defendants, however, reveal none where a short delay by itself was the reason for refusal of a trademark or copyright preliminary injunction. Furthermore, the Court of Appeals has described *Citibank* as not changing the presumption of irreparable injury from a finding of likelihood of confusion in a trademark case. That court stated that *Citibank* only stands for the proposition that a preliminary injunction will not issue where there is no likelihood of confusion and de-

lay by the movant. *Church of Scientology Int'l v. Elmira Mission of the Church of Scientology*, 794 F.2d 38, 42 (2d Cir.1986).

Furthermore, delay while reasonably attempting to settle the matter out of court does not undercut preliminary injunctive relief. *See, e.g., Comic Strip Inc. v. Fox Television Stations, Inc.*, 710 F.Supp. 976, 981 (S.D.N.Y.1989).

While neither party's characterization of their pre-litigation dealings is totally convincing, assuming plaintiffs' description of their activities as basically accurate, plaintiffs have not delayed sufficiently to permit a finding that they are themselves responsible for any irreparable injury of which they now complain.

As to the claims of trade dress and trademark infringement and the claims of unfair competition, I begin by discussing the issue of irreparable injury. I then turn to the merits of the claims separately and then reach the issue of the balance of hardships. Following this, I turn to the copyright claims.

## IRREPARABLE INJURY

Irreparable injury usually follows almost inevitably in a trademark or trade dress infringement case once a strong likelihood of confusion has been shown because damage to reputation is difficult to prove or quantify. *See, e.g., Church*, 794 F.2d at 41 (considering registered mark); *LeSportsac, Inc. v. K Mart Corp.*, 754 F.2d 71, 75 (2d Cir.1985).

■ The mere loss of control over the good will associated with one's mark is sufficient to establish irreparable injury. *Church*, 794 F.2d at 43. Therefore, it is unnecessary to decide if plaintiffs' alleged fears of Ajit's methods of business operation are reasonable.

## TRADEMARK CLAIM UNDER FEDERAL STATUTE

■ Plaintiffs request a preliminary injunction barring defendants' use of the marks PLAK–AWAY and PLAK–AWAY 2000 for a toothbrush allegedly identical to the one marketed by the plaintiffs under

the mark PLAK–AWAY. This request is made pursuant to 15 U.S.C. § 1125(a) because the mark has not been registered.

■ To show likelihood of success in a § 1125(a) case, one must show likelihood of confusion as to the source of the product by an appreciable number of ordinarily prudent purchasers. *See, e.g., Goya Foods, Inc. v. Condal Distributors, Inc.,* 732 F.Supp. 453, 454 (S.D.N.Y.1990). This involves both a showing that consumers associate the unregistered mark with a particular source and the likelihood that the defendants' item will be confused with it. *Id.* "[S]imilarity, even identity, is not enough if [the plaintiff] ha[s] no interest in the word ... that entitle[s] him to restrict [its] use." *Murphy v. Provident Mut. Life Ins. Co.,* 923 F.2d 923, 926 (2d Cir.1990), *cert. denied,* — U.S. —, 112 S.Ct. 65, 116 L.Ed.2d 40 (1991).

■ Since the claimed mark is merely descriptive (plaintiffs concede it is a weak mark) and has not been registered, this consumer-source identification, "secondary meaning," cannot be simply presumed. *See, e.g., McGregor–Doniger Inc. v. Drizzle, Inc.,* 599 F.2d 1126, 1132–33 (2d Cir. 1979); J. McCarthy, *Trademarks & Unfair Competition* (2d ed.1984) § 15:1.

Plaintiffs mention that they have spent money on advertising this product and have sold what they consider a large volume of items. They have, however, only used PLAK–AWAY since October 1990. They supply no other evidence of secondary meaning.

■ Advertising, sales volume, and length of use of a mark are all evidence from which consumer recognition of the mark may be inferred. *See, e.g., Centaur Communications, Ltd. v. A/S/M Communications, Inc.,* 830 F.2d 1217, 1221 (2d Cir.1987); McCarthy § 15:16.

As defendants point out, plaintiffs do not distinguish between the amounts spent on or earned from the toothbrush, the clampack packaging of the tooth whitening system, and the opaque packaging of that system. Furthermore, the plaintiffs have used tradenames for the toothbrush and packages for the tooth whitening system which are not involved in the instant suit. Since they have alleged no patent right to the products themselves, the issue is consumer connection between a particular dress or name for the product and the plaintiffs. Each allegedly infringed mark must be separately considered for secondary meaning.

The allegedly infringed commercial discussed below does not help plaintiffs' showing either on this trademark or the below discussed trade dress claims. It uses the trademark NEUTRA PLAQUE for the toothbrush and shows a completely white box for the tooth whitening system.

In addition, defendant Ajit asserts and plaintiffs do not deny that the Telebrands Corps. used the mark PLAK–AWAY starting on June 22, 1990, for the type of rotating toothbrush in issue. A newspaper ad shows the paper's date of June 27, 1990. He further asserts that the mark is still in use but admits a hiatus in its use.

■ Defendants argue that priority of use must be shown to warrant a preliminary injunction. This somewhat inaccurately describes current law. Defendants rely on *P. Daussa Corp. v. Sutton Cosmetics (P.R.) Inc.,* 462 F.2d 134, 136 (2d Cir. 1972). The actual requirement in *P. Daussa* was priority of right of use. As discussed above, mere use of common law descriptive marks does not create rights. Secondary meaning is needed. The fact that either of the parties used the mark first is not determinative of priority of right to use the mark through the establishment of secondary meaning. Moreover, defendant Ajit urges that I require a higher burden of proof for finding secondary meaning. Defendants' alleged short use prior to plaintiffs' short use certainly does not meet the burden of proof he has suggested.

However, accepting all of plaintiffs' allegations and discounting any controverted allegations of the defendants, plaintiffs have failed to make a sufficient showing of secondary meaning to establish a likelihood

of success on the merits on their trademark claim.

Since as discussed below they also fail to show that the balance of hardships tips decidedly in their favor, a showing of serious questions going to the merits will not help them. It is, accordingly, unnecessary to discuss the issue of likelihood of confusion.

### FEDERAL STATUTORY TRADE DRESS CLAIM

█ Plaintiffs' papers are to say the least opaque on the central issue of what trade dress they consider infringed. However, read liberally these papers might present a claim of infringement of two different boxes used for the three-chemical tooth whitening system. One box is opaque while the other shows the bottles through a clear plastic blister (or "clam") pack. This is not, as defendants attempt to characterize it, a claim for infringement by use of similar bottles. The bottles are relevant merely as a visible component of one of the packages.

These boxes are both unregistered and therefore protectible, if at all, under 15 U.S.C. § 1125(a).

█ The factors to consider in an inquiry as to likelihood of success on the merits here are essentially the same as for the descriptive unregistered mark discussed above. *See, e.g., Direct Marketing of Virginia, Inc. v. E. Mishan & Sons*, 753 F.Supp. 100, 105 (S.D.N.Y.1990). Evidence of secondary meaning is vital as "non-verbal marks that are unregistered always require proof of secondary meaning." *Murphy*, 923 F.2d at 927.

Plaintiffs' showing of secondary meaning rests on the same undifferentiated circumstantial evidence (volume of sales and advertising) as used for the trademark discussed above.

Therefore, as to the trade dress claims, even accepting all the plaintiffs' allegations and discounting any controverted allegations by the defendants, plaintiffs have failed to make a sufficient showing of secondary meaning. Accordingly, I am unable

to find that they have shown a likelihood of success on the merits.

Since as discussed below they also fail to show that the balance of hardships tips decidedly in their favor, a showing of serious questions going to the merits will not help them. The issue of likelihood of confusion, thus, need not be discussed.

### STATE LAW CLAIMS

█ Plaintiffs assert that N.Y.Genl. Bus.Law § 368–d and New York common law allow injunctive relief for trademark and trade dress infringement on a showing of likelihood of confusion without the need to show secondary meaning. They cite *Perfect Fit Industries, Inc. v. Acme Quilting Co.*, 618 F.2d 950, 953 (2d Cir.1980) (trade dress).

█ This statement of the law is oversimplified. Under New York common law, secondary meaning is not needed only if some form of predatory conduct is shown. *See, e.g., 815 Tonawanda Street Corp. v. Fays Drug Co., Inc.*, 842 F.2d 643, 649 (2d Cir.1988). Predatory conduct involves actual deception of customers or bad faith misappropriation of others' labor. *Id.*

Plaintiffs have not made such a showing. They have simply asserted bad faith in a conclusory fashion.

New York Genl.Bus.Law § 368–d protects against "injury to ... the distinctive quality of a mark." This statute only protects extremely strong or distinctive marks. *See, e.g., Allied Maintenance Corp. v. Allied Mechanical Trades, Inc.*, 42 N.Y.2d 538, 399 N.Y.S.2d 628, 369 N.E.2d 1162 (1977). While this does not limit protection to nationally famous marks, a strong showing of secondary meaning is required. *See, e.g., Mead Data Central, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 875 F.2d 1026, 1038 (2d Cir. 1989). Plaintiffs have not made such a showing.

Therefore, on the state law claims, plaintiffs have not shown a likelihood of success on the merits. As with the federal claims, I will not discuss the issue of fair grounds

for litigation as a balance of hardships has also not been shown.

## BALANCE OF HARDSHIPS

■ Plaintiffs have alleged only a total outlay for products and advertising undifferentiated by product or mark. They claim a total outlay in all advertising costs of $4,925,914 and sales of 150,000 combined units of the toothbrush and tooth whitening system worth $8,459,244 through September 30, 1991.

Plaintiffs have not listed current inventory, outstanding orders, or any other figures of help in determining the balancing of hardships.

Defendant TDRC lists large amounts of money currently tied up in each item, e.g., an inventory of 68,000 units of the DAZZLE tooth whitening system. They claim a current exposure for goods ordered or in house of $1,514,350. Plaintiffs do not dispute these figures.

Both parties' figures include toothbrushes which are only indirectly at issue because they are usually sold with the tooth whitening system. Neither side has alleged that the brushes could not be sold separately. Of course, such sale might involve changes in advertising and packaging.

Plaintiffs also argue the the balance of hardships tips decidedly in their favor since their investment in good will is at issue. However, their showing is insufficient to support a relationship between the trademark and trade dress at issue and their reputation. On this record, plaintiffs have failed to show that the balance of hardships tips decidedly in their favor.

Accordingly, on the federal and state claims for trademark, trade dress, and unfair competition, plaintiffs have failed to make the showing required for a preliminary injunction. Accepting their statements, they have at most shown irreparable injury and serious questions going to the merits without the required showing that the balance of hardships tips decidedly in their favor. I, therefore, deny without a hearing their request for a preliminary injunction.

## COPYRIGHT CLAIMS

■ A prima facie case of copyright infringement consists of proof that the plaintiff owns a valid copyright and that the defendant has committed unauthorized copying of protected material. *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d Cir.1985). A registration certificate is prima facie evidence of the existence of a valid copyright. *Id.*

## TELEVISION COMMERCIAL

■ Plaintiffs have supplied a copyright certificate for the television commercial. Therefore, plaintiffs have shown a prima facie case for a valid copyright in the commercial.

Defendants raise several issues in regard to the registration. However, since as discussed below I decline to issue a preliminary injunction on other grounds, I do not reach these issues at this time. As to copying, plaintiffs rely on access through the broadcasting of the commercial and alleged substantial similarity for an inference of copying. Certainly the number of broadcasts of the plaintiffs' commercial shows the required "reasonable possibility" of access. *Gaste v. Kaiserman*, 863 F.2d 1061, 1066 (2d Cir.1988). This is not a bare possibility, nor is it based on speculation or conjecture. *Id.*

Defendants could rebut this with a showing by "strong, convincing, and persuasive evidence" of their own independent creation. *Gund, Inc. v. Russ Berrie and Co., Inc.*, 701 F.Supp. 1013, 1025 (S.D.N.Y. 1988).

In opposition to this, Ajit supplies his own affidavit and that of the producer of the commercial that it was independently created.

However, if the evidence shows "striking similarity," the finder of fact is allowed, though not compelled, to infer copying even with no evidence of access and against a claim of independent creation. *Gaste*, 863 F.2d at 1067-68.

Striking similarity exists when two works are "so nearly alike that the only reasonable explanation for such a great degree of similarity is that the later ... was copied from the first." *Id.* at 1067 n. 3 (citation omitted). The issue of copying, therefore, rests on the similarities which are judged according to the perception of an "ordinary observer" or an "average lay observer."

Having viewed the commercials at issue, I do not consider them strikingly similar, although similarities exist. For example, the principal models are blond women; a girl with braces is one of the subsidiary models in both; a similar five-part list of the effects of plaque is used; a similar layout is used for a comparison with the advertisement of a more expensive competitor. The organization of the commercials is similar. They move from simulations, to lists of product virtues, to price comparison with competitors, to request for telephone order.

However, such an inquiry does not end the matter. One can only obtain copyright protection for "original works of authorship." 17 U.S.C. § 102(a). To engage in infringement, the copier must take the original, protectible material from the first work. *Feist Publ. v. Rural Tel. Svc. Co.,* — U.S. —, 111 S.Ct. 1282, 1296, 113 L.Ed.2d 358 (1991).

■ Copyright protects expression, not content. In general, the building blocks of the commercials, the individual pictorial images, and word content are not substantially similar. One can, however, protect the arrangement and selection of nonprotectible items if the arrangement itself is a work of authorship. *Id.* 111 S.Ct. at 1293.

However, to be protectible the pattern similarity must be reasonably close. The similarity here fails Judge Learned Hands' classic abstractions test. *Nichols v. Universal Pictures Corp.,* 45 F.2d 119 (2d Cir. 1930) (similarity between "Abie's Irish Rose" and "The Cohens and the Kellys" is too abstract to be infringement).

■ Furthermore, protectible items do not include so-called *scenes à faire.*

*See, e.g., Walker v. Time Life Films, Inc.,* 615 F.Supp. 430, 435 (S.D.N.Y.1985), *aff'd,* 784 F.2d 44 (2d Cir.), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2278, 90 L.Ed.2d 721 (1986). Material or themes commonly repeated in a certain genre are not protectible by copyright. In this case, both the similar content and the similar organization of the commercials are largely such common items when one considers the genre of television commercials for direct telephone sale of consumer goods.

In this category, I include for example references to more expensive competing products, shots of print advertisements of such products, free offers of complementary goods, close ups of the offered item in use, and close ups of "undesirable" competing goods during similar use.

■ Furthermore, factual items are not copyrightable. *See, e.g., Feist,* 111 S.Ct. at 1296. The dangers of plaque are such factual material. The exact wording of the two lists is not identical. The close similarity is caused by the common desire to use the shortest term possible for a simple piece of information. In such cases, the exact expression used to relay the information is not protectible by copyright under the "merger doctrine." *Baker v. Selden,* 101 U.S. 99, 25 L.Ed. 841 (1879); *Consumers Union v. General Signal Corp.,* 724 F.2d 1044, 1049 (2d Cir.1983), *reh'g denied,* 730 F.2d 47 (2d Cir.), *cert. denied,* 469 U.S. 823, 105 S.Ct. 100, 83 L.Ed.2d 45 (1984); *Morrissey v. Procter & Gamble,* 379 F.2d 675 (1st Cir.1967).

For these reasons, I conclude that on the copyright claim that the plaintiffs have not shown a likelihood of success on the merits or even sufficiently serious questions going to the merits to make them fair ground for litigation. It is, accordingly, unnecessary to discuss the issues of irreparable injury or balance of hardships concerning the television commercial.

### THE INSERT CARD

■ Plaintiffs assert a copyright claim for both the instructions on how to use the tooth whitening system which is printed on the back of the insert card in their clam-

pack and for the artwork and text now on the front of that card.

Since they have presented registration certificates covering these works, they have made a prima facie showing of ownership of valid copyrights.

As to the instructions, defendants admit copying but claim permission. As to the artwork and text on the front of the insert, defendants have claimed lack of similarity and independent creation.

The claim of similarity is colorable. Access is reasonably possible.

If no other issues were presented, I would hold an evidentiary hearing to consider whether a preliminary injunction should issue. However, no hearing is necessary because plaintiffs have failed to make the required showing of irreparable injury.

In the Second and Ninth Circuits, standard wisdom is that irreparable injury is presumed in copyright cases. Therefore, a finding of likelihood of success on the merits automatically triggers a preliminary injunction, and failure to issue one is reversible error if the validity of the copyright and existence of copying are not at issue. M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 14.06[B] at 14–77, 14–86 (citations omitted).

This is, however, a generalization. No detailed showing of irreparable injury has to be made in most copyright cases since such injury can "normally" be presumed. *See, e.g., Wainwright Sec. v. Wall St. Transcript Corp.*, 558 F.2d 91, 94 (2d Cir. 1977) (citations omitted), *cert. denied*, 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 759 (1978). This presumption assumes that the market for the allegedly infringed work is being injured by the allegedly infringing work. *Id.*

The usual pattern is direct competition which involves both difficulty of computing damages and possible injury to good will or reputation. *See, e.g., Recycled Paper Products Inc. v. Pat Fashions Industries, Inc.*, 731 F.Supp. 624, 627 (S.D.N.Y.1990) (defendant sells competing goods to "retail outlets inferior to [plaintiffs'] target mar-

ket, and such sales would injure [plaintiffs'] reputation and image."); *Imperial Textile Co. v. Ametex Fabrics Inc.*, 682 F.Supp. 18, 20 (S.D.N.Y.1987) ("The continued presence of defendant's cheaper fabric on the market will necessarily injure sales of Imperial's own design and create a loss of good will in the industry. Such lost sales are virtually impossible to establish hereafter.").

However, many cases exist where this presumption has not been followed. Grounds for refusing this presumption include the triviality of the injury, *see, e.g., Consumers Union of U.S., Inc. v. Hobart Mfg. Co.*, 189 F.Supp. 275 (S.D.N.Y.1960) (injury was price of known number of 60¢ reprints of copied article, damage to reputation because quoting firm mentioned article was not reachable by copyright), damages clearly reducible to money, *see, e.g., Original Appalachian Artworks, Inc. v. Granada Electronics, Inc.*, 1986 Copyright L. Dec. (CCH) ¶ 25,898, 1986 WL 2402 (S.D.N.Y.1986) (plaintiff's complaint that its foreign licensee shipped goods to the United States was compensable by difference between fee it received from defendant and fee it received from its United States licensee), and alleged infringement limited to specific copies of the work rather than its reproduction, *see, e.g., Walt Disney Productions v. Basmajian*, 600 F.Supp. 439 (S.D.N.Y.1984) (sale of artwork at auction).

Analogous to the situation at bar is *Dow Jones & Co. v. Board of Trade*, 546 F.Supp. 113 (S.D.N.Y.1982). Dow Jones was refused a preliminary injunction barring the defendant from disseminating copies of the lists of stocks used in computing its index. The *Dow Jones* court distinguished between different types of harm the Board was allegedly inflicting on Dow Jones. That court refused to consider the non-copyright harm of competition through trading in the listed stocks. *Id.* at 120.

That court also partially relied on the fact that the list of stocks had never been sold separately by Dow Jones and carefully distinguished between different products created by Dow Jones. *Id.* at 121.

"Nothing in the record, however, indicates that the lists themselves have any value. They have never been sold or licensed as independent units. Rather, their contents are disclosed without charge via brochures and telephone, and they are included in various Dow publications for sale. Evidence that various entities, including the [present defendant], have offered large sums for permission to trade futures contracts based on Dow's Averages is not probative as to the lists themselves. No credible evidence has been received on the question of potential impairment of the value of the *Wall Street Journal* or the News Service from the copying of Dow's lists."

Here as well I am asked to enjoin the use of an article which has never been sold separately. This circumstance is not changed by the fact that other firms may sell such items separately.

What is clear is that plaintiffs are attempting to enjoin the use of the images and text on the package so as to interfere with the defendants' sale of the product within the package. The competition between these parties is over the sale of that merchandise, not over advertising revenues.

While not quantified in this record, it is clear that the copyrighted images and text on the insert are a trivial addition to the saleability of the enclosed product. Certainly nothing adduced by the plaintiffs supports an opposite conclusion.

Another argument is, of course, that the use of the images and text on the package will harm the good will or reputation of the plaintiffs. This argument might be sufficient if the plaintiffs' reputation was clearly tied to this packaging.

However, the discussion above of this same package in reference to the trade dress claim shows that proof of this association between the plaintiffs and the package is lacking. The concept of protecting "secondary meaning in the making," i.e., the mental association between a supplier and a mark before the connection actually exists, has been considered and rejected by the Federal Circuit, which has special expertise in such matters, during its review of a case from the Southern District of New York. *Cicena Ltd. v. Columbia Telecommunications Group*, 900 F.2d 1546, 1550 (Fed.Cir.1990). This decision is, of course, not binding authority.

The Second Circuit has stated that it has not adopted the doctrine of secondary meaning in the making, even though it refrained from stating that it would never adopt the doctrine. *Murphy*, 923 F.2d at 929. *But see Laureyssens v. Idea Group, Inc.*, 768 F.Supp. 1036, 1048 (S.D.N.Y.1991) (Sweet, J.) (using doctrine). Even to its proponents, this doctrine is limited to protection against "deliberate attempts to capitalize on a distinctive product." *Id.* (citations omitted). Plaintiffs have not made a showing that anything of this nature is involved here.

While copyright and trademark are separate legal theories which may be separately invoked, I cannot ignore the reality that the plaintiffs here are attempting to limit competition in an unpatented product and using copyright to sidestep the showing required under trademark.

If the competing item were the copyrighted item, as is the usual case, *see, e.g.*, *Imperial Textile*, 682 F.Supp. 18, this distinction would not matter. However, that is not the case.

I conclude that the proper remedy for infringement of the copyright in the images on a package which has withstood a trade dress claim between the same parties is most likely a fee based on the shown value of the image. *Cf. CBS v. ASCAP*, 320 F.Supp. 389, 167 U.S.P.Q. 754 (S.D.N.Y.1970) (awarding a fee for use of the copyrighted music during pendency of the suit in place of a preliminary injunction barring broadcasting of the music), *modified on other grounds*, 168 U.S.P.Q. 460 (S.D.N.Y.1970). The copyright statute allows but does not command injunctive relief. 17 U.S.C. § 502(a).

The Ninth Circuit, which shares the Second Circuit presumption of irreparable injury, has suggested apportionment of profits as an alternative to preliminary injunctions.

*Abend v. MCA, Inc.,* 863 F.2d 1465 (9th Cir.1988), *aff'd sub nom. Stewart v. Abend,* 495 U.S. 207, 110 S.Ct. 1750, 109 L.Ed.2d 184 (1990) (classic movie "Rear Windows" should not be enjoined for infringing underlying work); *Universal City Studios v. Sony Corp. of America,* 659 F.2d 963 (9th Cir.1982) (maker of Betamax should pay fee to holders of movie copyrights if found infringing), *rev'd on other grounds,* 464 U.S. 417, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984). While the Supreme Court did not reach this issue, Justice Blackman has noted his agreement with the approach. 464 U.S. at 499, 104 S.Ct. at 818 (Blackman, J., dissenting).

Accordingly, since the showing for a preliminary injunction on the trade dress claim for the clam-pack has not been made, I decline to find irreparable injury to support a copyright injunction on the art work, text, and instructions on the insert in the clam-pack.

For the reasons discussed above, plaintiffs' motion for consolidation is denied. Defendants' request for permission to amend the complaint is granted on condition that the copyrights allegedly infringed be specified. Defendants' request for expedited discovery is referred to Magistrate Judge Ross. The preliminary injunction requested is denied.

SO ORDERED.