**CUISINARTS, INC., Plaintiff,**

**v.**

**ROBOT–COUPE INTERNATIONAL CORPORATION, Defendant.**

**No. 81 Civ. 731–CSH.**

United States District Court, S. D. New York.

March 11, 1981.

Golenbock & Barell, Arthur M. Handler, Michael M. Meadvin, Lillian S. Weigert, New York City, of counsel, for plaintiff.

Alexander & Green, Robert D. DeRight, Jr., Whitney I. Gerard, David S. Pennock, New York City, of counsel, Watson, Leavenworth, Kelton & Taggart, Thomas V. Heyman, James J. Foster, New York City, of counsel, for defendant.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Cuisinarts, Inc. brought this action against Robot-Coupe International Corporation ("RC–I") for alleged violation of the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a), and the laws of the State of New York. Jurisdiction is predicated on 15 U.S.C. § 1121, 28 U.S.C. § 1338(a) and (b), and the doctrine of pendent jurisdiction. The case is before the Court on Cuisinarts' motion for a preliminary injunction.

The dispute turns upon RC–I's advertising, promotion and marketing of food processors and related accessories, designed for use in the home. The home food processor (as opposed to professional models used in restaurants) has achieved dramatic commercial success in the United States during the past decade. The present case pits Cuisinart, the most successful domestic distributor of home food processors, against the American affiliate of Robot-Coupe S.A., a French corporation founded by the inventor of the original device. The issues are hotly contested. The verbal exchanges between the parties in their affidavits, and counsel in their briefs, are as cutting in their own fashion as the whirling blades of a food processor, slicing and chopping, or reducing fruits and vegetables to a puree.

### I.

The following undisputed facts emerge from the affidavits.

In 1963 a French inventor, Pierre Verdun, originated a food processor for use in professional kitchens. Verdun obtained a French patent on this device in 1964, and formed Robot-Coupe S.A. ("RC") to produce and market the device. By 1971, RC's professional food processors had been sold to restaurants throughout Europe and in the United States.

By 1971, Verdun had adapted the food processor so that it could be used in the home. He obtained a further French patent on his invention in 1973. RC sold its home food processors in Europe and the Middle East, marketing 21,366 units in these areas in 1972.

Carl G. Sontheimer, the President of Cuisinarts, observed RC's home-adapted food processor while attending a trade show in France in 1971. Sontheimer, a retired physicist and engineer, had founded Cuisinarts in 1971 with his wife. Cuisinarts' first commercial product, marketed under the Cuisinart trade name, was an imported line of stainless steel cookware. Sontheimer purchased some RC home food processors

for testing, with a view towards marketing them in the United States. Sontheimer communicated with RC toward that end, and designed alterations in the machine which he persuaded RC to incorporate. Certain of these alterations were designed to make the processor safe for home use. Sontheimer currently holds United States patents on some of these alterations.

In December, 1972, RC and Cuisinarts entered into a contract pursuant to which Cuisinarts became the exclusive distributor in the United States of RC's home food processors. Under the terms of the contract, Cuisinarts could not sell food processors made by anyone else. Cuisinarts mounted a successful promotional, advertising and marketing campaign, and the device found ready acceptance with the American housewife. United States sales soared from 1200 units in 1973 to upwards of 290,000 units in 1980.

In September, 1976, Cuisinarts obtained from the United States Patent Office federal trademark registration number 1,048,883 for the trademark "CUISINART." The trademark registration recites that it was issued for:

"FOOD PROCESSOR KITCHEN MACHINES FOR CUTTING, SLICING, GRATING, RASPING AND CHOPPING FOOD ITEMS, AND FOR ACCESSORY ATTACHMENTS THERETO, IN CLAUSE 7 (U.S.CL.23)."

The first use, and appearance in commerce, is stated to be in or about July, 1973.

Burgeoning sales were accompanied by quality control problems in manufacture by RC, which led to recalls and other difficulties. In early 1978, Sontheimer threatened RC with termination of the distributorship, and the suspension by Cuisinarts of its entire food processor business, unless RC permitted Cuisinarts to sell food processors made by others, as well as the RC-manufactured line. RC agreed to this amendment in its contract with Cuisinarts.

Following the amendment, Cuisinarts contracted with Sanyei Corporation, a Japanese manufacturer, to build a food processor to Cuisinarts' specifications, embody-ing Cuisinarts' modifications. Sanyei commenced manufacture of Model DLC–7 in 1978, and Model DLC–8 in 1979. Cuisinarts marketed these models in the United States under its own trade name, and continued, during this period, to market processors manufactured by RC, also under its "Cuisinart" trade name.

Freed of its obligation to distribute only RC-manufactured food processors, Cuisinarts turned increasingly to its Japanese source of supply. In 1979, less than forty percent of Cuisinarts' dollar volume represented food processors manufactured by RC. In 1980, that percentage was further reduced by half. RC, dissatisfied with its diminishing United States sales, gave notice in August, 1980 of its intention to terminate Cuisinarts' distributorship. That termination became effective December 31, 1980. In October, 1980, in anticipation of its severed relationship with Cuisinarts, RC formed RC–I, a Delaware corporation, to market RC food processors in the United States under the name "Robot-Coupe." The President of RC–I, Alvin B. Finesman, was until 1979 director of development at Cuisinarts. The advertising and marketing campaign launched by RC–I on behalf of the RC-manufactured food processors, now sold in the United States under the name "Robot-Coupe," gives rise to this litigation.

## II.

The litigation is acerbic because competition in a lucrative market is compounded by personal animosity. Messrs. Sontheimer and Finesman do not like each other. Finesman gave an interview to a trade publication in January, 1981 (". . . Al Finesman doesn't like Carl Sontheimer . . . 'somebody's got to stop him,' he says . . . He's taken Sontheimer's product, he's taken his warehouse manager, he's even taken his old secretary. Now he's out to take his business."); Sontheimer's affidavit evidences a comparable personal regard for Finesman. Cuisinarts' basic perception is that RC–I is stealing its successful trademark; RC–I responds that Cuisinarts has pirated RC's successful invention.

Broader ramifications of these commercial and personal disputes are not before me. Neither party asserts a claim of patent infringement. I am concerned only with the question whether RC–I's advertising and promotion campaign makes unauthorized use of the CUISINART trademark in such a manner as to violate the Lanham Act and pertinent state law. To answer that question, RC–I's advertising and promotion campaign must be considered in some detail.

The evidence focuses upon RC–I's advertisements in papers and trade journals, and its promotional demonstrations in department stores. A number of advertisements are in evidence, as exhibits to affidavits.

RC–I's advertising campaign, energetically undertaken in January of this year, was intended to stress two particular points: (1) food processors made in France by RC, previously sold in the United States under the Cuisinart trade name, are now being sold under the Robot-Coupe trade name; and (2) while rival food processors, including Cuisinart, were now made in Japan, the Robot-Coupe food processor is made in France. This latter point reflects a perceived connection, in the home cook's eye, between French products and the pleasures of *haute cuisine.*

Thus RC–I's initial advertising campaign featured, as one of its two main categories, a series of ads centering on a two-page spread. The left-hand page shows six food processors, drawn up in seeming battle array, each flying the Japanese flag. A food processor with the "Cuisinart" trademark prominently displayed upon its body appears as the lead unit in a column of three Japanese processors, next to a Panasonic. These processors are photographed under a caption which reads: "There are many food processors made in Japan." The right-hand page of the spread depicts a Robot-Coupe processor, under the caption: "The original is still made in France." The text accompanying the picture recites, *inter alia,* that "Robot-Coupe is the original food processor, invented, perfected and still *made in France.*" A footnote at the bottom of the

right-hand page, in small type, reads as follows:

"Prior to January 1, 1981, home models of Robot-Coupe food processors sold in the U.S. were sold under the name Cuisinart, a registered trademark of Cuisinarts, Inc. Now Robot-Coupe will be marketed as Robot-Coupe, our original French name. Model RC3500 shown above is our newest original."

The record does not reveal any protest made by Cuisinarts in response to this particular advertisement, which appeared in magazines.

Cuisinarts complains particularly of a second series of ads which RC–I caused to be published in a number of trade journals, as well as *Gourmet,* a magazine of wider circulation. The ad in question is a two-page spread. To the left a photograph of a Robot-Coupe food processor appears. To the right, the following caption appears:

"ROBOT–COUPE

IT'S PRONOUNCED ROBO–COOP"

Underneath these lines, in smaller but still prominent type, the following parenthetical remark appears:

"(It Used To Be Pronounced Cuisinart $^R$ )*"

The asterisk refers to a footnote appearing at the bottom of the right-hand page, in very small type, which sets forth the same recitation in the footnote to the "battle flag" advertisement described *supra.*

Cuisinarts is particularly critical of the phrase "It used to be pronounced Cuisinart," which Cuisinarts alleges may create the following false and misleading impressions in the minds of the trade and the public: (1) that Robot-Coupe was formerly known as Cuisinarts, and has changed its name to Robot-Coupe, thereby implying that Robot-Coupe is the successor in interest to Cuisinarts, or that Cuisinarts is no longer in business; (2) that Robot-Coupe was the manufacturer of all food processors sold in the United States under the name Cuisinart prior to January 1, 1981; and (3) that food processors sold after January 1, 1981 under the name Robot-Coupe are the

same food processors as were previously sold under the name Cuisinart prior to that date.

As proof that such confusion in fact resulted, Cuisinarts offers in evidence copies of three newspaper columns. Toni Burks, the food guide editor of the Roanoke, Virginia *Times World-News*, wrote in her "Kitchen Klatch" column in the January 7, 1981 issue:

"... as of Jan. 1, Cuisinart food processors will no longer be Cuisinart food processors. Instead, they will be Robot-Coupe (pronounced robo-coop)."

Wanda A. Adams, food writer for the Everett, Washington *Herald*, wrote in her column, "Accent-Food" on January 7, 1981:

"Bye bye, Cuisinart. Robot-Coupe (pronounced row-bow coop), the inventor of the food processor, has decided to dispense with the name Cuisinart, under which their machines have been sold in this country. Beginning this month, you'll start seeing Robot-Coupe on the machines. The firm has started a new American affiliate, Robot-Coupe International Corp., to handle the business end."

*The France-Amerique*, a weekly French language newspaper published in New York, printed an article in its January 29-February 4, 1981 edition which (in translation) was headlined: "CUISINARTS CHANGES ITS NAME." The text of the article read as follows (again in translation):

"Up until the end of last year, all the products of Robot-Coupe (a french company) were sold under the name Cuisinart in the American market. Since the beginning of this year, Cuisinart has disappeared ['Cuisinart a disparu'] and the french name of the company has taken back its rights. A publicity campaign has been started to make the public aware of the change."

On its original application for a preliminary injunction, Cuisinarts also filed affidavits of a number of its employees, recounting comments made to them by others in the trade tending to show that Robot-Coupe's advertising campaign was generating confusion. These affidavits were supplemented by one from a cooking school instructor, who said that her students had expressed confusion. In addition, Cuisinarts submitted, as exhibits to an affidavit identified by another Cuisinarts employee, two letters received from Cuisinarts customers, in which uncertainty concerning the status of Cuisinart, as the result of Robot-Coupe's advertising, is clearly expressed. Finally, an affidavit of Cuisinarts' owner service director is submitted, reciting that a number of customers' calls expressing confusion were received and logged during the first week of February, 1981. Names and addresses of the calling customers are set forth in that affidavit.

Cuisinarts filed its complaint and obtained an order to show cause seeking a preliminary injunction on February 6, 1981. In his affidavit verified February 11, Finesman of RC–I, opposing a preliminary injunction, refers specifically to the advertisement containing the phrase "It used to be pronounced Cuisinart," and says of it:

"By the time that Cuisinarts brought on the instant action and application, the ads utilizing this tagline had run their course. At the time of receipt of Cuisinarts' summons, complaint and moving papers, no future ads using this tagline had been set, and no such ads are scheduled at the present time for use in the future." Affidavit, p. 6, ¶ 8(b).

This disclaimer is echoed in counsel's brief opposing preliminary injunction:

"Relevant to the question of irreparable harm is the fact that the ads attached to the complaint as Exhibits B–D had run their course before this action had begun. At the time that the papers in this action were received no future ads using the tag line 'It used to be pronounced Cuisinart' had been set, and no such ads are presently scheduled." Defendant's brief at 15, footnote.

Notwithstanding these disclaimers, asserted by Finesman and adopted by RC–I's attorneys, Cuisinarts has demonstrated by supplemental papers that, on February 12, 1981, RC–I staged a demonstration of the

Robot-Coupe food processor at Bloomingdale's, a leading New York City department store. The demonstration area was posted with a copy of a Robot-Coupe advertisement, prominently displaying the language "Robot-Coupe . . . It used to be pronounced Cuisinart." Two such posters were on display when a Cuisinarts investigator returned to Bloomingdale's on February 17. On that date, the investigator taped the demonstrator's remarks. On two occasions, the demonstrator said: "This is the original food processor still made in France formerly under the name of Cuisinart . . ."

Given Finesman's disclaimer in an affidavit verified on February 11, I am bound to regard this continued use of displayed poster advertisements containing the phrase in question as evidence of an effort to mislead both Cuisinarts and the Court. That effort does not serve RC–I well in a court of equity.

During the pendency of this motion for a preliminary injunction, Cuisinarts and RC–I have exchanged further advertising broadsides in the newspapers. Cuisinarts ran an ad in the *New York Times* of February 26, 1981, captioned: "ARE YOU AS EASILY FOOLED AS THEY HOPE YOU ARE?" The text goes on to correct the misimpressions which Cuisinarts perceives in the RC–I advertising which forms the subject matter of this litigation. RC–I riposted with an ad in the *Times* of March 1, 1981, reproduced the Cuisinarts ad, under the caption "WHO'S FOOLING WHOM?", and then proceeded, in text, to give a factual recitation of the Cuisinarts/RC relationship summarized *supra*.

This lively *brouhaha* has caught the attention of the press. See, *e. g.*, the business section of the *New York Times* for March 7, 1981, at p. 29, which reproduces the ads in question under the headline "FOOD MACHINE RIVALRY FLARES–CUISINARTS SUES ITS EX–PARTNER OVER AD DRIVE," and quotes extensively from the litigation file.

Against this background, I consider Cuisinarts' motion for a preliminary injunction.

### III.

A recent articulation of the standards governing the issuance of a preliminary injunction, within the trademark infringement context, appears in *Dallas Cowboy Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 206–07 (2d Cir. 1979):

"A preliminary injunction is proper where the plaintiff establishes possible irreparable harm and either (1) probable success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor."

Cuisinarts first invokes the Lanham Act. Since it registered its "CUISINART" trademark, Cuisinarts may rely upon § 32(1)(a) of the Act, 15 U.S.C. § 1114(1), which provides in pertinent part:

"(1) Any person who shall, without the consent of the registrant—

"(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; . . . shall be liable in a civil action by the registrant for the remedies hereinafter provided. . . ."

In addition, Cuisinarts relies upon § 43(a) of the Act, 15 U.S.C. § 1125(a), which provides:

"Any person who shall affix, apply, or annex, or use in connection with, any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used,

shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation."

■ The same facts which substantiate an action for trademark infringement under § 32 will make out an action for false designation under § 43. *Boston Professional Hockey Association, Inc. v. Dallas Cap & Emblem Manufacturing, Inc.*, 510 F.2d 1004, 1012–13 (5th Cir. 1975), *cert. denied*, 432 U.S. 868, 96 S.Ct. 132, 46 L.Ed.2d 98 (1975). Each prong of the preliminary injunction standard requires preliminary consideration of the merits. RC–I contends that Cuisinarts has suffered no actionable wrong because the Robot-Coupe ads have done nothing more than describe, factually and accurately, the past and present commercial relationships between the two companies; and that RC–I may reproduce the Cuisinart trademark in its marketing campaign for that legitimate purpose.

■ Not all "unauthorized" use of a trademark is prohibited by the laws of trademark infringement or unfair competition. Trademarks of a rival company can be used in competitive advertising, so long as the advertising "does not contain misrepresentations or create a reasonable likelihood that purchasers will be confused as to the source, identity, or sponsorship of the advertiser's product." *Smith v. Chanel, Inc.*, 402 F.2d 562, 563–64 (9th Cir. 1968); *SSP Agricultural Equipment Inc. v. Orchard-Rite Ltd.*, 592 F.2d 1096, 1103 (9th Cir. 1979); *Societe Comptoir De L'Industrie Cotonniere Etablissements Boussac v. Alexander's Department Stores, Inc.*, 299 F.2d 33, 36 (2d Cir. 1962); *Herbert Products, Inc. v. S & H Industries, Inc.*, 200 USPQ 247 (E.D.N.Y.1977).

■ In *Societe Comptoir*, the Second Circuit stated generally:

"In any proceeding under the Lanham Act the gist of the proceeding is a 'false description or representation,' 15 U.S.C.A. § 1125(a), or a use of the mark which 'is likely to cause confusion or mistake or to deceive purchasers as to the source of origin of such goods or services,' 15 U.S.C.A. § 1114(1). The registering of a proper noun as a trade-mark does not withdraw it from the language, nor reduce it to the exclusive possession of the registrant which may be jealously guarding against any and all use by others. Registration bestows upon the owner of the mark the limited right to protect his good will from possible harm by those uses of another as may engender a belief in the mind of the public that the product identified by the infringing mark is made or sponsored by the owner of the mark. *Champion Spark Plug Co. v. Sanders*, 331 U.S. 125, 67 S.Ct. 1136, 91 L.Ed. 1386 (1947) citing with approval, *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 44 S.Ct. 350, 68 L.Ed. 431 (1924). The Lanham Act does not prohibit a commercial rival's truthfully denominating his goods a copy of a design in the public domain, though he uses the name of the designer to do so. Indeed it is difficult to see any other means that might be employed to inform the consuming public of the true origin of the design." 299 F.2d at 36.

*Herbert Products, supra*, illustrates the operation of these principles in a case where, as in the case at bar, the manufacturer of an item undertook by advertising to advise the public that it had severed relations with its former exclusive distributor. The former distributor brought suit to enjoin the use of its name in the manufacturer's advertising. The district court denied a preliminary injunction, stating in part:

"... collateral and truthful references to the trademark of another are permissible as long as the 'unauthorized' reference does not cause confusion as to the source of the product advertised. *Delaware and Hudson Canal Co. v. Clark*, 80 U.S. 311, 327, 13 Wall 311, 20 L.Ed. 581 (1872). 'Equity will not enjoin against telling the truth.' Id." 200 USPQ at 250.

In consequence, the Lanham Act does not prohibit the Robot-Coupe interests (com-

prising RC and RC–I) from including in their advertisements an accurate account of their past and present relationships with Cuisinarts. That is why the explanatory footnote appearing in the ads, although using the registered trademark "CUISINART," neither infringes that trademark nor constitutes unfair competition. Similarly, an ad attempting to persuade the public to buy one product rather than the other (the "battle flags" presentation) offends no law, so long as no false or misleading factual material is utilized.

The converse of this proposition is that RC–I may not use the "CUISINART" trademark to cause confusion as to the source of origin of the goods, or to publish misrepresentation. That brings us to the prominent headlines in the advertisement particularly under attack in this litigation: "ROBOT–COUPE—IT'S PRONOUNCED ROBO–COOP (It Used To Be Pronounced Cuisinart)."

That text creates precisely the false and misleading impressions of which Cuisinarts complains. The two-page spread shows a machine. What is that machine? It is a food processor. What is the food processor's name? Its name is Robot-Coupe. Did the machine used to be called something else? Yes: "It used to be pronounced Cuisinart." What does that tell us about Cuisinart? It tells us that "as of January 1, Cuisinart food processors will no longer be Cuisinart food processors." Thus reported the Roanoke, Virginia *Times World-News*. Must we, then, bid *adieu* to Cuisinart? Yes. "Cuisinart a disparu," advises *France-Amerique*. "Bye bye, Cuisinart," says the Everett (Washington) *Herald*.

I can sympathize with these uniformly erroneous journalistic conclusions of Cuisinarts' commercial demise because I would form the same impression from reading the advertisement in question.

It is also readily apparent that readers of this ad could reasonably conclude that all food processors sold under the name "Cuisinart" prior to January 1, 1981 were made by R.C. That is not the fact; in 1979 and 1980 most Cuisinarts came from Japan; and

(again contrary to the impression created by the ad) they were structurally different in some respects.

These are impressions which the trial judge is competent to form, in determining whether a preliminary injunction should issue. Notwithstanding RC–I's argument that the present record contains insufficient evidence of actual consumer confusion, the very reading of the advertising copy in question makes the possibility of confusion obvious. District judges are competent to understand the obvious. Thus District Judge Gurfein (as he then was), in *Geo. Washington Mint, Inc. v. The Washington Mint*, 349 F.Supp. 255 (S.D.N.Y.1972), considering whether the defendant's alleged trademark infringement should be preliminary enjoined, did not hesitate to proceed on the basis of his own analysis, in the absence of any proof of actual confusion:

"While there has been no proof of actual confusion yet, the very reading of the two trademarks makes it obvious that there is a strong likelihood of confusion of origin (at least in commemorative silver plates) and proof of actual confusion is not necessary, see *Gold Master Corp. v. Miller*, 380 F.2d 128, 129 (2 Cir. 1967) where the products are the same and the class of customers relatively the same. See *Communications Satellite Corp. v. Comcet, Inc.*, 429 F.2d 1245, 1252 (4 Cir.), *cert. denied*, 400 U.S. 942, 91 S.Ct. 240, 27 L.Ed.2d 245 (1970); *American Foods, Inc. v. Golden Flake, Inc.*, 312 F.2d 619, 624 (5 Cir. 1963). The plaintiff is not required to prove palming off. *Best & Co. v. Miller, supra*. The question is whether the plaintiff is a person likely to be damaged by the defendant's use of the false description." 349 F.Supp. at 262.

Nor need the plaintiff at trial prove actual confusion in order to prevail on the issue of the likelihood of confusion. *McGregor-Doniger Inc. v. Drizzle Inc.*, 599 F.2d 1126, 1136 (2d Cir. 1979) and cases cited.

RC–I places heavy reliance upon *American Brands, Inc. v. R. J. Reynolds Tobacco Co.*, 413 F.Supp. 1352 (S.D.N.Y.1976), but the facts are inapposite. While *American*

*Brands* involved a claim of false advertising, which Judge Lasker held fell within § 43(a) of the Lanham Act, the advertising in question did no more than boast of the low tar quantity in defendant's cigarettes; no reference was made to plaintiff's trademark. Judge Lasker held, after trial, that, in the absence of evidence of a survey of consumer reaction, plaintiff had not proved the alleged confusion resulting from the advertising. However, the court observed that "if there is such a substantial similarity between the plaintiff's mark or name and the defendant's that the likelihood of confusion must necessarily follow, a court can grant relief on its own findings without recourse to a survey of consumer reaction." 413 F.Supp. at 1356. Distinguishing the advertising in *American Brands* from cases where the judge could form his own impressions, Judge Lasker said:

> "We are dealing not with statements which are literally or grammatically untrue; and the tendency to deceive alleged here does not arise out of possible confusion of one product with another." *Id.* at 1357.

In the case at bar, the advertisement under attack gives rise to a reasonable likelihood of confusion of one product with another, as well as confusion with respect to the present status of Cuisinarts as a distributor of food processors.

Of course, if proof of actual confusion were required, it is furnished by the three quoted newspaper articles. That a trio of independent journalists (two of them food writing specialists) reached the same erroneous conclusion concerning the nature of the food processors now being sold, and Cuisinarts' status in the industry, is eloquent testimony to the misleading propensity of certain aspects of RC–I's campaign. I may disregard the hearsay nature of other elements of Cuisinarts' proof on actual confusion—although not all of it may be so disregarded—and nonetheless conclude, as I do, that both the likelihood and the fact of confusion, stemming from these ads, are sufficiently established to justify a preliminary injunction.

The small-type footnote designated by the asterisk, while factually accurate, is insufficient to cure the several misleading impressions which arise out of the prominent headline. It is unreasonable to assume that all prospective purchasers, their imagination caught by the catchy headline, would take time to ponder the commercial realities of the tiny footnote. "... [B]uyers are not likely to ruminate on their first impressions," Gurfein, D. J., in *Geo. Washington Mint, supra* at 262. It follows that plaintiff has established probable success on the merits of its Lanham Act claims.

■ Under either prong of the preliminary injunction standard, Cuisinarts must show "possible irreparable harm." But this factor requires no extended analysis. The "vital issue" in Lanham Act preliminary injunction cases turns on an analysis of the underlying merits. *Amer. Home Products v. Johnson Chemical Co.*, 589 F.2d 103, 106 (2d Cir. 1978). That is because, in Lanham Act cases, "[t]here is no question that irreparable harm would result from a failure to enjoin if the plaintiff ultimately succeeds on the merits." *Ibid.* This conclusion stems from the nature of the rights protected by the Lanham Act, and the recognition that consequences of trademark infringement and unfair competition "are by their nature not fully compensable by money damages." *National Lampoon v. American Broadcasting Co.*, 376 F.Supp. 733, 750 (S.D. N.Y.), *aff'd per curiam*, 497 F.2d 1343 (2d Cir. 1974), citing *Omega Importing Corp. v. Petri-Kine Camera Corp.*, 451 F.2d 1190, 1195 (2d Cir. 1971). "The crucial issue in these cases is 'whether there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused'," as a result of the conduct challenged. *McGregor-Doniger, Inc., supra* at 1130. That "crucial issue" remains the same, whether the court's focus is on trademark infringement *per se* under 15 U.S.C. § 1114, or the broader law of unfair competition, 15 U.S.C. § 1125(a), of which trademark infringement is a facet. *E. g., Avon Shoe Co. v. David Crystal, Inc.*, 279 F.2d 607, 614 (2d Cir.),

*cert. denied*, 364 U.S. 909, 81 S.Ct. 271, 5 L.Ed.2d 224 (1960). Where allegedly infringing conduct threatens to continue absent injunction, the weakening of plaintiff's trademark rights, the impairment of its reputation and good will, the danger engendered by unfair competition, the likely public confusion, and the difficulties in proving actual monetary damages resulting therefrom, all weigh in favor of a presumption of irreparable harm sufficient to satisfy the requisite showing of its *possibility*. In the case at bar, RC–I's determination to continue infringing, unfair, and misleading use of Cuisinarts' trademark is manifest in the record. Cuisinarts is entitled to an appropriate preliminary injunction.

RC–I's "unclean hands" defenses, centering upon Cuisinarts' alleged intent to conceal the Japanese manufacture of its food processors, and a *nolo contendere* plea entered in an antitrust prosecution in the District of Connecticut are entirely without substance.

The parties have not addressed the question of security under Rule 65(c). In essence, RC–I will be enjoined from misleading advertising. There are perfectly legitimate modes by which RC–I can inform the public and advertise its product, as other presentations in evidence demonstrate. In these circumstances, no need for security is demonstrated, and I make no order for it.

## IV.

It remains to consider the form of the preliminary injunction. To the extent possible, the order should be "specific in terms," and "describe in reasonable detail ... the act or acts sought to be restrained," Rule 65(d). In the case at bar, the order cannot deal specifically with all possible permutations of the language. But the governing principles are clear enough, and the defendant should be able to avoid becoming a contemnor.

The Court herewith enters the following:

## ORDER

Defendant Robot-Coupe International Corporation, its officers, agents, servants, employees, and attorneys, and those persons or companies in active concert or participation with them, or who contract with them to furnish advertising, promotional, or marketing facilities, and who receive actual notice of this order by personal service or otherwise, are hereby

## PRELIMINARILY ENJOINED

from printing, reproducing or displaying the phrase "It used to be pronounced Cuisinart" in any advertisement, poster or printed display which refers to Robot-Coupe food processors; and the said parties are further

## PRELIMINARILY ENJOINED

from printing, reproducing, displaying, or uttering, in any advertising or promotional material or presentation, language stating or implying:

(1) that Robot-Coupe S.A. or Robot-Coupe International Corporation was formerly known as Cuisinarts, or that Cuisinarts has changed its name to Robot-Coupe, or that Robot-Coupe is the successor in interest to Cuisinarts, or that Cuisinarts is no longer in business;

(2) that Robot-Coupe was the manufacturer of all models of food processors sold in the United States under the name "CUISINART" prior to January 1, 1981;

(3) that food processors purchased after January 1, 1981 under the name "ROBOT–COUPE" are identical to the food processors sold under the name "CUISINART" prior to that date.