**EASTMAN KODAK COMPANY,**
Plaintiff,

v.

**PHOTAZ IMPORTS LTD., INC.,**
d/b/a **Filmart, Defendant.**

No. 93–CV–6278.

United States District Court,
W.D. New York.

Aug. 4, 1993.

Richard D. Rochford, Jr., James D. Kole, Nixon, Hargrave, Devans & Doyle, Rochester, NY, for Eastman Kodak Co.

Louis B. Cristo, Gough, Skipworth, Summers, Eves & Trevett, A. Vincent Buzard, Rochester, NY, Oliver P. Howes, Jr., Nims, Howes, Collison, Hansen & Lackert, Thomas Furth, Levisohn, Lerner & Berger, New York City, for defendant.

## DECISION AND ORDER

TELESCA, Chief Judge.

### *INTRODUCTION*

This action arises from sales of film and disposable cameras by defendant Photaz Imports Ltd. d/b/a/ Filmart ("Photaz") which plaintiff Eastman Kodak Company ("Kodak") alleges are violative of the Trade–Mark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1051 *et seq.*, and related state law, and of the Copyright Act, 17 U.S.C. § 101 *et seq.* Kodak alleges that Photaz packages its film and cameras so as to (i) infringe certain trademarks registered by Kodak (First Claim), in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114, (ii) infringe Kodak's established trade dress (Second Claim), in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), (iii) falsely represent the

expiration date on repackaged Kodak film (Second Claim), in violation of Section 43(a) of the Lanham Act, (iv) unfairly compete with Kodak in the sale of film and cameras (Third Claim), (v) violate Section 349 of New York's General Business Law (Fourth Claim), and (vi) infringe copyrights in Kodak's pictorial and textual directions for its single-use camera (the "FunSaver") (Fifth Claim), in violation of 17 U.S.C. § 504(c)(2).

Pending before the Court are Kodak's motion for a preliminary injunction and Photaz's cross-motion to transfer venue to the Southern District of New York, where both parties do significant business. The parties have briefed both motions and have had oral argument on the application for injunctive relief. For the reasons discussed below, plaintiff's motion for a preliminary injunction is granted and the cross-motion to transfer is denied.

### FACTS

Kodak has engaged in the sale of photographic film and camera supplies for over 100 years. Its markets are worldwide. Photaz has engaged in the business of distributing film and related photographic products since 1980. It distributes films manufactured by Kodak, Polaroid, Agfa, Fuji, and others. It began distributing Kodak film in 1986, and considers itself one of the major distributors of Kodak film in the greater New York City area. Photaz's business, however, is not limited to New York City; it sends its catalogs and fills telephone orders beyond the Metropolitan area, both within New York State, including the Western District of New York, and to other states.

### A. Photaz's Sale of Repackaged Film Multipacks

When Photaz purchases film manufactured by Kodak, Fuji, or others, it sometimes repackages[1] the film for resale in "Value Packs," multiple packs of the brand film at an enhanced price. When Photaz repackages Kodak film into Value Packs, it removes the film from its original factory box, which bears the film's expiration ("process-before") date. An expiration date is then affixed to the outside of the Value Pack package. The Value Packs are bright yellow, with block print lettering in other strong colors, including red, blue, black, or gold. In smaller print, they state that they are "Repackaged in The USA From Kodak Multipacks". In similarly small print, they bear the legend that "KODAK is a Registered Trademark of Eastman Kodak Company Rochester NY". In its Winter 92/93 catalog, Photaz advertised both the Value Packs of Kodak film and individual and factory packs of Kodak film.

Kodak's laboratory examination by a company film quality engineer of various sample rolls of Kodak film sold by Photaz in its Value Packs revealed that the expiration dates had been altered, extended a number of months in most cases. Kodak prints the expiration date on its individual film packages, which Photaz does not use in its repackaged Value Packs. The affidavit of the film engineer who examined the film states that use of stale film may affect negatively the quality of pictures taken with it.

### B. Photaz's Sale of Single-use Cameras

In the fall of 1992, Photaz began selling recycled single-use cameras under the trademark "Snap Shot". As advertised in its Winter 92/93 catalog, the Snap Shot package bore the brand name "Filmart". The photocopies of Snap Shot sample packages annexed to the complaint, however, use the name Snap Shot *without* the use of the brand name "Filmart". The packages are uniformly bright blue with accents in bright yellow and red. Both the package and the enclosed camera bear the legend that "KODAK is a Registered Trademark of Eastman Kodak Company Rochester NY". That statement is printed on a yellow background in red and black letters. The package bears a picture of the lens from the enclosed camera, which is marked "Kodak Lens". The "Limitations of Liability" statement printed in small letters on the bottom of the outside package states in its final sentence, "This is an original camera manufactured by Kodak, recycled, reloaded with quality film, and repack-

---

1. It is unclear, from both the defendant's papers and the answers of defendant's counsel to the Court's questions at oral argument, whether Photaz itself repackages the film or obtains it in repackaged form from a third party.

aged by FGI." While the package states that Kodak is located in Rochester, New York, nowhere does it indicate the identity/location of FGI.

The Snap Shot camera—essentially another box within the outer packaging—has pictorial and textual directions on the back consisting of four simple drawings and accompanying text, which are virtually identical to the directions printed on Kodak's single-use camera, the FunSaver.

### C. Kodak's Response to the Infringement

Although Kodak learned of the marketing of used single-use cameras from recycled Kodak FunSaver components in September 1992, Kodak argues that it did not learn of the breadth of the infringement involved until it received Photaz's Winter 1992/93 catalog. Indeed, when Kodak first learned of the Snap Shots, it thought their source was a company called "Rising Eagle", associated with another company called "Film Art". Kodak subsequently learned of the association of Filmart with Photaz, and of the extent of the infringement which is obvious from Photaz's Winter 92/93 calendar. Kodak thereupon consulted counsel concerning Photaz's advertising and packaging early this year and, in February, Kodak's counsel wrote to Photaz, demanding that it cease its trademark violations and suggesting non-infringing trade dress and textual revisions. Responses from Photaz's counsel, who has since been replaced, indicated that Photaz was willing to accede to Kodak's demands, without acknowledging that their use of (i) certain packaging colors, (ii) the word Kodak, and (iii) the copyright legend, had constituted any wrong doing under either state or federal law. When, however, further independent investigation by Kodak indicated that Photaz continued to offer the offending Value Packs and Snap Shots for sale, and that Snap Shots had been represented at a major industry trade show as "customized Kodak" disposable cameras, Kodak commenced this action and sought a preliminary injunction.

### D. The Relief Kodak Seeks

Kodak seeks an order (A) requiring Photaz to (i) stop using any Kodak trademark, (ii) stop selling film or camera products with substituted, changed expiration dates, (iii) deliver all infringing inventory for destruction, (iv) recall all infringing products shipped after the date of Kodak's first demand letter in February 1993, (v) stop using Kodak's pictorial and textual instructions for its Snap Shot; (B) impounding all Snap Shots using instructions which copy those for the Kodak FunSaver; and (C) requiring Photaz to file a statement of compliance with the order's other provisions.

In support of its application for preliminary injunctive relief, Kodak argues that its trademarks and trade dress are among the strongest in the world and are accordingly entitled to provisional protection; that the nature and extent of Photaz's infringements thereon (i) are sure to confuse consumers as to the source of the Photaz products and (ii) indicate that Photaz intended to effect such confusion in the marketplace; and that the quality of at least some of the products which Photaz sells as Kodak products is questionable, if not poor, and likely to damage Kodak's good name and good will in the marketplace.

In this regard, Photaz is selling Value Packs of Kodak film with altered expiration dates that have been extended, which may result in consumers using stale film. Moreover, Photaz's Snap Shot, which is manufactured using parts recycled from the Kodak FunSaver, incorporates a used Kodak lens bearing the legend "Kodak Lens". While other single-use parts may be recycled successfully (and, indeed, are recycled by Kodak and other camera manufacturers), a lens may be scratched or otherwise damaged, and affect photographic quality. Thus the very component of a Snap Shot which bears the name "Kodak" may result in poor photo quality. The gist of Kodak's argument is not merely that Photaz is trading on Kodak's name, but that it is trading on that name in products of questionable quality.

### E. Photaz's Opposition

In opposing Kodak's application for provisional relief, Photaz argues that (i) the Snap Shot trade dress was not confusingly similar to that of Kodak's single-use camera, the FunSaver, (ii) no basis exists for Kodak's statements that the Snap Shot, with a recy-

cled lens, is significantly inferior to the Fun-Saver, (iii) well-settled Supreme Court precedent protects the right to sell refurbished/reconditioned goods under their original brand, (iv) Photaz displayed the Kodak trademark legend on its packages in order to protect Kodak's mark from being genericized, (v) Kodak's trade dress is not distinctive and Kodak has failed to present to the Court evidence of that trade dress having acquired secondary meaning in the market, (vi) Photaz has made no effort to pass off its products as those of Kodak and, insofar as the advertisements of third-parties would suggest such passing off, Photaz is simply not responsible for the actions of such third-parties, and (vii) because Kodak waited eight months from the date of first discovering Photaz's use of its trademark to bring this action, laches precludes the granting of preliminary relief.

At oral argument of Kodak's motion, Photaz's counsel confirmed that Photaz had discontinued the sale of repackaged Kodak film, i.e., discontinued packaging and selling Kodak Value Packs. Counsel also introduced yet another version of the Snap Shot package which defendant had devised in an attempt to meet Kodak's demands. The background color of that package is aqua and, while it bears the legend concerning Kodak's trademark, it is no longer printed on a yellow-gold background with red and black print. Although welcoming Photaz's representations with respect to discontinuing Sale of the Value Packs and changing the Snap Shot trade dress, Kodak's counsel indicated to the Court that Kodak employees had very recently ordered and received from Photaz both a Value Pack and Snap Shots in their former trade dress. Based on those sales, and on the earlier failure of Photaz to follow through on its response to Kodak's complaints, Kodak renewed its request for a preliminary injunction.

## DISCUSSION

### A. Standard for Granting Preliminary Injunctive Relief

■ It is well settled in this circuit that a preliminary injunction may issue only upon a showing of "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Jackson Dairy, Inc. v. H.P. Hood & Sons*, 596 F.2d 70, 72 (2d Cir.1979); *see also Coca–Cola Co. v. Tropicana Products, Inc.*, 690 F.2d 312, 314–15 (2d Cir.1982); *Polymer Technology Corp. v. Mimran*, 975 F.2d 58, 61 (2d Cir.1992) (trademark preliminary injunction); *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d Cir.1985) (copyright preliminary injunction). In an action such as this, alleging trademark and copyright violations, the proof of irreparable harm and likelihood of success may be nearly identical, since trademark infringement and copyright violation presumptively constitute irreparable harm. *See Cuisinarts, Inc. v. Robot–Coupe Intern. Corp.*, 509 F.Supp. 1036, 1044 (S.D.N.Y.1981) and cases cited thereat ("The vital issue in Lanham Act preliminary injunction cases turns on an analysis of the underlying merits [because] there is no question that irreparable harm would result from a failure to enjoin if the plaintiff ultimately succeeds on the merits." Citations and quotations omitted.); *Hasbro*, 780 F.2d at 192 ("Irreparable harm may ordinarily be presumed from copyright infringement. Citations omitted. A prima facie case of copyright infringement consists of proof that the plaintiff owns a valid copyright and that the defendant has engaged in unauthorized copying." Citations omitted.) Thus, Kodak's right to the provisional relief which it seeks depends on the merits of its underlying trademark and copyright claims.

### B. The Trademark Claims

#### 1. Trademark Infringement—Use of the "KODAK" Mark

Kodak alleges that Photaz has infringed its trademark in "KODAK" by its use of the word on its photographic products, including imprinting the legend concerning the Kodak trademark, using recycled photographic lenses stamped "Kodak Lens", and making references to Kodak in the limitations of liability provision.

Photaz counters that long-standing Supreme Court precedent concerning the use of trademarks in connection with the sale of repackaged or refurbished goods protects its right to use the Kodak trademark in connection with the sale of Value Packs and Snap Shots, citing *Prestonettes, Inc. v. Coty,* 264 U.S. 359, 44 S.Ct. 350, 68 L.Ed. 731 (1924) and *Champion Spark Plug Co. v. Sanders,* 331 U.S. 125, 67 S.Ct. 1136, 91 L.Ed. 1386 (1947). Briefly, *Prestonettes* upheld the right of a third-party to use the trademark of a product's manufacturer in connection with the repackaging and resale of such product, provided its use does not create confusion as to the source of the repackaged product. 264 U.S. at 359, 44 S.Ct. at 351. Similarly, *Champion* upheld the right of a seller of refurbished goods to use the trademark of the original manufacturer in connection with such sale, provided the goods are clearly marked as second hand and the use of the trademark creates no confusion as to their source. 331 U.S. at 129, 67 S.Ct. at 1139.

██ These cases reflect a general rule of trademark law, that it does not restrict "the sale of genuine goods bearing a true mark even though the sale is not authorized by the mark owner." *Polymer Technology,* 975 F.2d at 61, citations omitted. These cases, and that rule, reflect the fundamental purpose of trademark law: to prevent, or at least minimize, confusion in the marketplace as to a product's source. *See id.,* n. 8. "When [a] mark is used in a way that does not deceive the public we see no such sanctity in the word as to prevent its being used to tell the truth. It is not taboo." *Prestonettes,* 264 U.S. at 359, 44 S.Ct. at 351, citations omitted.

██ In this case, however, defendant's reliance on these cases is misplaced, because Photaz's use of Kodak's mark on its film and camera packages raises questions and creates confusion as to the source of those products. Notwithstanding Photaz's statements of its motivation for using the statement concerning Kodak's registered trademark, the statement itself, whether or not it is printed in that "familiar Kodak yellow," *Eastman Kodak Co. v. Royal Pioneer Paper Box Manuf. Co.,* 197 F.Supp. 132, 133 (E.D.Pa.1961), creates the impression that Kodak and the product are somehow related. Similarly, the inscription "Kodak Lens" on the Snap Shot lens reinforces that impression, because it *is* a Kodak lens and says so in a block print readily associated with Kodak. And, again, contrary to Photaz's insistence, the language of its "Limitation of Liability" provision compounds, rather than clarifies, the confusion, when it states that "[t]his is an original camera manufactured by Kodak, recycled, reloaded with quality film, and repackaged by FGI[,]"[2] without anywhere identifying either FGI or its relationship/nonrelationship with Kodak. The very viewing of the defendant's use of Kodak's mark, *especially considered in light of the absence of any other brand name on the Snap Shot,* "makes the possibility of confusion obvious[,]" *Cuisinarts,* 509 F.Supp. at 1043, and on that basis I find that Kodak has established its right to provisional relief with respect to Photaz's use of the mark "Kodak". *Id.* ("District judges are competent to understand the obvious.")

## 2. The Trade Dress Issue

██ Trade dress is "essentially [a product's] total image and overall appearance[,]" *Two Pesos, Inc. v. Taco Cabana, Inc.,* —— U.S. ——, —— n. 1, 112 S.Ct. 2753, 2755 n. 1, 120 L.Ed.2d 615 (1992), "the total image of a good as defined by its overall composition and design, including size, shape, color, texture, and graphics...." *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.,* 933 F.2d 162, 168 (2d Cir.1991). Section 43(a) of the Lanham Act, "[al]though enacted as part of the Trademark Act, [ ] functions as a federal law of unfair competition for unregistered goods [and] extends protection to a product's 'trade

---

2. The Limitations of Liability provision appears on the Snap Shot package and reads in its entirety: "This product will be replaced if defective in assembling or repackaging. Except for such replacement this product is sold without warranty or liability even though defect, damage, or loss is caused by negligence or other fault. Since color dyes may change over time this product will not be replaced for, or otherwise warranted against, any change in color. This is an original camera manufactured by Kodak, recycled, reloaded with quality film, and repackaged by FGI."

dress'...." *Id.* Whether or not it has acquired secondary meaning in the marketplace—that is, whether or not the consuming public has come to identify the trade dress of products with the source of those products— inherently distinctive trade dress is protectable under Section 43(a). *Two Pesos,* —— U.S. at ——, 112 S.Ct. at 2757 (effectively overruling *AnnTaylor* on this point, *see Braun Inc. v. Dynamics Corp. of America,* 975 F.2d 815, 825 (Fed.Cir.1992)).

■■■■ The seller of a product does not, however, secure for itself exclusive and absolute design rights simply by establishing a trade dress for such product; its rights are "solely in protecting its identity as the source of its product." *AnnTaylor,* 933 F.2d at 173 (Winter, J., concurring in part, dissenting in part.) Thus, liability under Section 43(a) on a trade dress claim requires proof not only of distinctive trade dress but also of the likelihood of confusion. *Two Pesos,* —— U.S. at ——, 112 S.Ct. at 2758. Accordingly, in order to establish likelihood of success on the merits of its trade dress claim, Kodak must establish both that its trade dress is distinctive and that Photaz's trade dress is confusingly similar.

The inherent distinctiveness and the strong secondary meaning of Kodak's trade dress—the "familiar Kodak yellow," *Royal Pioneer Paper,* 197 F.Supp. at 133, the red and black lettering and block print style, the use of strong accent colors such as royal blue together with the signature yellow—have been so well established for so long that defendant's denial of their existence, unsupported by citation to any authority, deserves little comment. *See, e.g., id.; see also Eastman Kodak Co. v. Fotomat Corp.,* 317 F.Supp. 304, 307–09 (N.D.Ga.1970), *appeal dismissed,* 441 F.2d 1079 (5th Cir.1971).

### a. Value Pack Trade Dress

■■■■ The similarity between Kodak's film packaging and Photaz's packaging of its Value Packs is obvious at a glance—the "familiar Kodak yellow", the strongly colored striping—and that similarity, *particularly in combination with the repeated use of the Kodak mark* discussed above, establishes that purchasers are likely to be confused as to the source of the Value Packs. In making this determination, I am mindful that the right to trade dress protection in the use of color is limited. *See, e.g., Nutrasweet Co. v. Stadt Corp.,* 917 F.2d 1024 (7th Cir.1990), *cert. denied,* 499 U.S. 983, 111 S.Ct. 1640, 113 L.Ed.2d 735 (1991); *Kodak v. Fotomat,* 317 F.Supp. at 309. If the slight variations of the Value Pack trade dress from the Kodak film trade dress—using, for instance, not only bright blue and red but also purple for its stripes, and packaging different numbers of film rolls—had raised questions as to whether Photaz's use of color in its packaging should be restricted, a review of the trade dress of other Value Packs, as evidenced in the Photaz catalog, resolved that doubt against Photaz: while Photaz's Kodak Value Packs are predominantly bright yellow, its Fugi Value Packs are predominantly the same bright green in which Fugi packages its own film. This pattern leaves absolutely no doubt that Photaz dresses its Value Packs so as to free ride on the trade dress of these film manufacturers.

### b. Snap Shot Trade Dress

■■■■ The trade dress of Photaz's Snap Shot is not such a glaring copy of Kodak's FunSaver, although the print styles employed are confusingly similar. While the FunSaver package is predominantly Kodak yellow with blue accents, the Snap Shot package, as submitted with the complaint, is predominantly blue with yellow accents. Nevertheless, I find that the likelihood of confusion is real: the use of very similar color patterns, in reverse predominance, suggests an association, and that suggestion is reinforced by the use of the Kodak trademark, as discussed above, as well as by the use of pictorial and textual instructions which are nearly identical to Kodak's.

■■■■ Kodak is entitled to provisional relief with respect to its trade dress claims and I do not find that that entitlement is diminished by the representations of Photaz's counsel that Photaz has (i) discontinued sale of the Kodak Value Packs and (ii) changed the colors of its Snap Shot camera package from the confusingly similar blue to aqua blue. While such actions by Photaz may serve to

limit the damages for which it may ultimately be found liable, they do not in and of themselves moot Kodak's application for injunctive relief in connection with its trade dress claim.

### 3. Alteration of the Expiration Dates

■ As stated above, Kodak's laboratory testing of samples of Kodak film which Photaz has sold both in Value Packs and in Snap Shots indicates that original expiration dates have been removed and new, extended dates substituted. Photaz's response to Kodak's affidavit proof of such alteration is a blanket denial and a request to depose the film engineer at Kodak who conducted the testing. Photaz has not, however, seen fit to disclose to the Court whether it or a supplier actually repackages the Kodak film into Value Packs. Moreover, it does not dispute Kodak's assertion that use of outdated film could result in inferior photographs.

"The Lanham Act was intended to make 'actionable the deceptive and misleading use of marks' and 'to protect persons engaged in ... commerce against unfair competition.'" *Two Pesos,* —— U.S. at ——, 112 S.Ct. at 2757, citing 15 U.S.C. § 1127. The broad protection afforded against unfair competition by Section 43(a) of the Act is not limited to protecting trade dress; it provides a right of civil action in favor of anyone who is damaged, or likely to be damaged, by the use "on or in connection with any goods or services, or any container for goods, ... [of] any ... false or misleading description of fact, or false or misleading representation of fact, which [ ] is likely to cause confusion, or to cause mistake...." 15 U.S.C.A. § 1125(a) (West Supp.1993); *see* S.Rep. No. 515, 100th Cong., 2d Sess. 40–41 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5577, 5603–04.

Kodak has established by affidavit that the expiration date on at least some of the Kodak film sold by Photaz has been altered, that such alteration may significantly affect the quality of the film, and that reliance on the expiration date may be to the detriment of the film user. Photaz has failed to rebut this

evidence, which provides the basis for provisional relief under Section 43(a).

### C. *Defendant's Laches Defense*

■ Photaz argues that, by letting eight months lag between learning of the recycled cameras using FunSaver components and filing this action, Kodak is estopped from seeking preliminary injunctive relief. "A party asserting the equitable defense of laches must establish both plaintiff's unreasonable lack of diligence under the circumstances in initiating an action, as well as prejudice from such delay." *King v. Innovation Books,* 976 F.2d 824, 832 (2d Cir.1992). The issue of laches "is committed to the discretion of the district court[.]" *Id.,* citation omitted.

In this case, defendant alleges that Kodak delayed eight months before commencing this action. As Kodak states, however, notice of the sale of Snap Shots did not inform Kodak of the breadth of the infringement; only a review of Filmart's Winter 1992/93 catalog did that, and by February 9, 1993, Kodak's counsel had issued the first of several cease and desist letters. I find no unreasonable delay here, nor can I discern any prejudice to defendant which does not arise solely from its infringing activities. *See id.* at 833; *Bausch & Lomb v. Nevitt,* 810 F.Supp. at 477–78.

### D. *The Copyright Claim*

■ This claim involves the pictorial and textual directions for use of the Snap Shot camera, which are virtually identical to those for the Kodak FunSaver.[3] Irreparable harm ordinarily may be presumed from copyright infringement. *Hasbro,* 780 F.2d at 192. A prima facie case of such infringement consists of proof that the plaintiff owns a valid copyright and that the defendant has engaged in unauthorized copying. *Id.,* citations omitted.

■ Photaz argues that Kodak's copyright claim is a frivolous tag-on to this trademark action. That argument, however, is premised largely on principles of trademark law concerning the likelihood of confusion as to the origin of the Snap Shot. Copyright violation turns on the extent to which unau-

---

**3.** When Kodak filed this action, its copyright registration applications on these directions were pending. Evidence of their registration was subsequently submitted to the Court.

thorized, or otherwise excused, copying, has occurred. Here, Kodak's copyright is undisputed; based on the virtual similarity of the sets of directions on the Snap Shot submitted with the complaint and Photaz's access to the FunSaver directions, the copying appears indisputable. Subsequent to the commencement of this action, Photaz made some changes in the directions, including substituting three photographs for the four pictograms and changing the text. Nevertheless, I find that Kodak is entitled to an order enjoining Photaz from infringing/resuming its infringement of Kodak's copyrighted directions. While at least one other district court in this Circuit has stated recently that injunctive relief may not lie for copyright violation of enclosed directions where the copyrighted material is but a "trivial addition to the salability of the enclosed product [,]" *Amer. Direct Marketing, Inc. v. Azad Intern., Inc.*, 783 F.Supp. 84, 96–97 (E.D.N.Y. 1992), that court's limitation of remedies was expressly premised on a finding that no confusion as to source of the product exists. Where, however, as in this case, a showing for preliminary injunctive relief has been made on a trade dress claim, "the usual presumption of irreparable harm, which attaches to copyright infringement, applies." *Id.* at 98. Accordingly, Kodak has established its right to provisional relief with respect to its copyright claim.

### E. *The Appropriate Scope of the Preliminary Injunction*

#### 1. Prospective Limitations

The determination that Kodak is entitled to preliminary relief on its trademark and copyright claims does not end the inquiry. I must determine the appropriate reach of such injunctive order. In this regard, defendant requests only that the Court "permit [its] use of Kodak within the *Champion* guideline." In *Champion*, the Supreme Court upheld the right of the seller of second-hand goods to make mention of the original manufacturer of its reconditioned products, "provided it is made clear that any plug ... is used and reconditioned by the defendants...." *Champion*, 331 U.S. at 128 n. 3, 67 S.Ct. at 1138 n. 3 (quoting the revised

decree imposed by Eighth Circuit.) In upholding the right of the seller of second-hand goods to make use of the trademarks of the original seller, the Court acknowledged that a used product "which has been repaired or reconditioned does not measure up to the specifications of a new one.... Inferiority is immaterial so long as the article is clearly and distinctively sold as repaired or reconditioned rather than as new." *Id.* at 128–129, 67 S.Ct. at 1138–39. While acknowledging that this result permits "the second-hand dealer [ ] some advantage from the trade mark[,] under the rule of *Prestonettes, Inc. v. Coty* [264 U.S. 359, 44 S.Ct. 350, 68 L.Ed. 731 (1924) ], that is wholly permissible, **so long as the manufacturer is not identified with the inferior qualities of the product resulting from wear and tear or the reconditioning by the dealer.**" *Id.* at 129, 67 S.Ct. at 1139, emphasis added.

In *Prestonettes*, the plaintiff repackaged Coty face powder. The Court upheld the plaintiff's right to state that it was repackaging Coty powder. In doing so, it stated that the case raised no issue of dishonesty or unfair competition ("[Plaintiff] does not charge the defendant with adulterating or otherwise deteriorating the plaintiff's product ...", 264 U.S. at 367, 44 S.Ct. at 351) and that the

> "question therefore is not how far the court would go in aid of a plaintiff who showed ground for suspecting the defendant of making a dishonest use of his opportunities, but is whether the plaintiff has the naked right alleged to prohibit the defendant from making even a collateral reference to the plaintiff's mark." *Id.* at 367, 44 S.Ct. at 351–352.

The Second Circuit has repeatedly stated that "[o]ne of the most valuable and important protections afforded by the Lanham Act is the right to control the quality of the goods manufactured and sold under the holder's trademark." *Polymer Technology*, 975 F.2d at 62, citations omitted. In this case "evidence rebutted by nothing" more than a bare denial indicates that Photaz has in effect made "dishonest use of [its] opportunities", *Prestonettes*, 264 U.S. at 367, 44 S.Ct. at 351, to repackage and sell Kodak film by alter-

ing/permitting to be altered the expiration dates on the film. Under these circumstances, I find that the well-settled rule of *Prestonettes*—that a trademark holder may not prohibit the mere mention of the trademarked name by a third-party in a commercial/advertising context—does not apply, and defendant may be enjoined from using the Kodak trademark in connection with the sale of Value Packs of Kodak film.

■ Kodak has also submitted unrebutted affidavit evidence that (i) the camera lens in a single-use camera does not recycle well, (ii) use of a recycled lens may result in poor photo quality, and (iii) while Kodak also recycles its single-use camera, because of these concerns, it never reuses the camera lens. In this case, the possible "inferiority" of the Snap Shot is not merely the result of ordinary use and wear and tear which any purchaser of a reconditioned product may expect, *cf. Champion*, 331 U.S. at 127, 67 S.Ct. at 1138; it results directly from Photaz's use of the very Kodak component on which Photaz largely bases its right to invoke the Kodak marks. Under these circumstances, I find that it is virtually impossible to permit the use of the Kodak mark on the face of the camera in a way which would not identify Kodak with "the inferior qualities of the product[,]" *cf. id.*

■ The rules of *Prestonettes* and *Champion* do, however, permit Photaz to continue to use the Kodak name in the Limitation of Liability legend on its Snap Shot packages, *provided* that statement is not misleading. In that regard, I note that submissions from the parties, received after oral argument, raise the issue of the truth of certain statements made in the Limitations of Liability provision. In a letter to the Court, Kodak argued for the first time that the statement,

"[The Snap Shot] is an original camera manufactured by Kodak ..." is not true, because the body of the camera, i.e., its cardboard housing, is not an original Kodak component. Photaz has asked the Court to disregard Kodak's letter. While I agree that the point would have been better made in Kodak's original papers and stated at oral argument, I can perceive no prejudice which accrues to Photaz from its consideration at this point. It is undisputed that Photaz provides new housings for its Snap Shot cameras—it has recently changed the design of that housing several times in an attempt to satisfy Kodak's objections—and the fact that the cardboard housing is an integral component of the camera is established by the prominent warning on its side panel: "Important: Do not open Camera Box." Thus, while Photaz may be entitled to mention the Kodak name in its Limitations of Liability provision, it must do so "in a way that does not deceive the public[.]" [4] *Prestonettes*, 264 U.S. at 367, 44 S.Ct. at 351.

In conclusion, I find that Photaz has infringed Kodak's trademark, its trade dress, and its copyright, and may properly be enjoined prospectively from manufacturing or effecting the manufacture, or shipping, or selling, of such infringing goods, in accordance with this decision.

### 2. Other Relief Sought

■ Kodak also asks this Court for an order of destruction of all infringing goods and an order of recall of all such goods shipped after February 10, 1993 [5]. Congress has authorized the court-ordered destruction of infringing goods. 15 U.S.C.A. § 1118 (West Supp.1993) (trademark); 17 U.S.C. § 503 (copyright). Copyright law expressly provides that destruction of infringing goods may be ordered only "[a]s part of a final

---

4. The following language, or variation thereof consistent with this decision, would be appropriate: "This product will be replaced if defective in assembling or repackaging. Except for such replacement this product is sold without warranty or liability even though defect, damage, or loss is caused by negligence or other fault. Since color dyes may change over time this product will not be replaced for, or otherwise warranted against, any change in color. This is a recycled single-use camera. Some of its components have been recycled from Kodak single-use cameras. **Kodak has not recycled this camera, is not related in any way to the parties who have recycled, reloaded, and repackaged it, and expressly disclaims any and all warranties with respect to its performance.** This camera was recycled, reloaded with quality film, and repackaged by FGI [Define FGI and insert its mailing address.]"

5. The initial cease and desist letter of Kodak's counsel to Photaz is dated February 9, 1993.

judgment or decree," and I neither have found, nor been cited to, any authority for ordering destruction of any infringing goods in connection with a preliminary injunction. With respect to the more temporizing remedies of recall and impounding, I acknowledge that another district court in this Circuit has recently ordered entry of a preliminary injunction requiring the recall of infringing goods. *See Home Shopping Club, Inc. v. Charles of the Ritz Group, Inc.*, 92–CIV–8173 (CSH), *available at* 1993 WESTLAW 228853 (S.D.N.Y. June 18, 1993). The record before me does not inform as to the amount of infringing goods in the marketplace or the cost of their recall, or the number of outlets to which they were shipped. Because "it is impossible to properly balance the competing hardships caused by the granting or denial of a recall order[,]" *Bausch & Lomb, Inc. v. Nevitt Sales Corp.*, 810 F.Supp. 466, 478 (W.D.N.Y.1993), citation omitted, I am unable to grant such a remedy at this time. I find, however, that the record warrants requiring defendant to provide notice to both its customers and to the consuming public that (i) its cameras are not Kodak products and that Kodak makes neither representations nor warranties with respect thereto and (ii) the expiration dates shown on the Value Packs may or may not be identical to those placed on the film originally by Kodak and that such alteration of the expiration dates may result in consumers' using outdated film.

A written announcement of the existence of this litigation and of the sum and substance of the notice in conformance with this decision shall be published and displayed in any outlet to which defendant shipped either Kodak film or Snap Shots on or after February 10, 1993. The parties are to confer and cooperate concerning the form and content of such notices and are to submit to the Court proposed drafts thereof within 5 business days of the date of this order. In addition to such posting, publication of the notices shall be made in the New York Times and in the next regularly scheduled Filmart catalog. All notice costs are to be borne by the defendant.

## F. *Defendant's Motion to Transfer*

Photaz states that it does not "reside" in the Western District for purposes of venue, which would make venue here improper under 28 U.S.C. § 1391(b). Nevertheless, its motion to transfer venue is premised on 28 U.S.C. § 1404 ("for the convenience of parties and witnesses, in the interest of justice"). Photaz argues that its only ties to this district are the sales of its products made to Kodak employees in connection with this action. It also argues that both parties do significant business in the Southern District, and that that district would be equally convenient to both parties. (Photaz's offices are located in the Eastern District.)

28 U.S.C. § 1391(b) provides that venue of a civil action "wherein jurisdiction is not founded solely on diversity of citizenship" is proper "only in (1) a judicial district where any defendant resides, ... (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, ... or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought."

Section 1391(c) provides that, for purposes of venue, a corporation resides "in any district [within a State] within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State...."

Photaz is a mail and phone order business; while the bulk of its business may be in the Metropolitan area, it sends its catalogs into the Western District and has filled orders in the Western District. This activity is sufficient to establish venue in this district and I do not find Photaz's arguments about the convenience of transfer to the Southern District sufficiently compelling to overcome the presumption in favor of a plaintiff's choice of venue. Accordingly, the motion for transfer is denied.

**WHEREFORE,** plaintiff's motion for a preliminary injunction is granted and defendant's cross-motion for transfer of the case is denied. Accordingly, defendant is enjoined from (i) using or imitating Kodak's trademarks and/or trade dress, (ii) selling Kodak

film, whether packaged as film or sold as a camera component, on which the expiration date listed differs from the expiration date placed by Kodak on the original package of such film, (iii) selling or shipping, directly or indirectly, any goods in its custody or control which infringe Kodak's trademark, trade dress, or copyrighted camera instructions; the parties shall submit to the Court within 5 business days draft notices consistent with this decision.

SO ORDERED.